Herman S. MUIR, Jr., Plaintiff,

v.

COUNTY COUNCIL OF SUSSEX COUNTY et al., Defendants.

Civ. A. No. 4680.

United States District Court, D. Delaware.

March 14, 1975.

Nicholas H. Rodriguez of Schmittinger & Rodriguez, Dover, Del., for plaintiff.

James D. Griffin, Georgetown, Del., for defendants.

## OPINION AND ORDER

LATCHUM, Chief Judge.

On June 28, 1973 plaintiff filed suit in this court against the named defendants to contest his dismissal from his post of County Administrator of Sussex County pursuant to a resolution passed on February 13, 1973 which terminated his services immediately and directed that his salary be paid to March 1, 1973. Alleging jurisdiction under 28 U.S.C. § 1343(3) and (4), as implemented by 42 U.S.C. § 1983, plaintiff claimed that his dismissal was in violation of (1) his rights to substantive due process, (2) procedural due process, (3) First Amendment rights, (4) equal protection of the laws, (5) the provisions of 9 Del. C. § 7003(b), and (6) the provisions of 9 Del.C. § 7006(c)(8) and Ordinance No. 6, Article 12, Ordinances of Sussex County Council. Plaintiff requested reinstatement to his former post, and compensatory and punitive damages. On November 18 and 19, 1974, a non-jury trial of the matter was had before this Court. The Court now reaches the following findings of fact and conclusions of law.[1]

## I. THE FACTS

The County Administrator of Sussex County is "[T]he chief administrative officer of the County" appointed by "the affirmative vote of a majority of the members of the County Council, for a term, not exceeding 4 years . . . ." 9 Del.C. § 7003(a). This post was created by the state legislature as part of a major reorganization of the governmental structure of Sussex County contained in 57 Del.Laws Ch. 762 and codified by 9 Del.Code, Part IV. Both on the date of passage of the reorganization statute (1970) and on the date the County Administrator's post became operative (January 1, 1971), the "Sussex County Council" consisted of three members serving a term that ran from January 1967 to January 1973:[2] John L. Briggs (PX 22); Richard Louis Timmons, (President of the "Council") (Tr. 160) [Trial Transcript, Docket Item 34]; and William Burton Chandler. (Tr. 179). Each was a member of the Republican Party.

Beginning in the latter part of 1970, the Council advertised seeking applicants for the position of County Administrator (Tr. 5), and from the over 100 applications ultimately received, interviewed approximately 35 individuals. (Tr. 161).[3]

---

1. On July 11, 1974, this Court denied defendants' motion for summary judgment because (1) conflicting inferences could be drawn from the record, (2) the record was incomplete in various respects, (3) issues such as motive would turn on the Court's evaluation of witnesses' testimony, and (4) the issues included alleged violations of plaintiff's right to free speech, procedural due process and substantive due process, (Docket Item 19), concerning which the Court may in its discretion decline to grant summary judgment if there is the " 'slightest doubt' which of several inferences is the most reasonable."

2. See former 9 Del.C. § 305(c) (1968 Cum. Supp.). Before July 23, 1970 the legislative body of Sussex County was called the Levy Court; technically, the Sussex County Council did not begin its first full term until January 1973. 9 Del.C. § 7002, subd. w, 57 Del.Laws, Ch. 762, § 44.

3. Skip Losner, a representative of the Division of Urban Affairs of the University of Delaware (Tr. 179), assisted the councilmen in both screening the applications and evaluating the candidates after the interviews. Losner's participation was intended "to help [the Sussex County Council] make an impartial decision on what [the Council] felt was a very important job." (Chandler, Tr. 179).

In October 1970, plaintiff Herman S. Muir, Jr., at the time a resident of Newport News, Virginia, submitted his application for the position of County Administrator. Muir had retired from the Air Force with the rank of Colonel on April 1, 1970. (Tr. 4). Between January 1971 and May 1971 the three Sussex County councilmen interviewed him on two occasions. (Tr. 6, 119).[4]

During the interviews, the county councilmen explicitly stated that the County Administrator's post was not a "political job" (Muir, Tr. 8), (Timmons, Tr. 166); consequently, they did not inquire into Muir's political affiliations (Timmons, Tr. 166), (Chandler, Tr. 184). Muir was also informed that in order to qualify as County Administrator he had to be a resident of Sussex County at the time he was hired and thereafter. (Muir, Tr. 6, 63, 119).[5] Regarding the length of Muir's employment as County Administrator, the three councilmen asked Muir "if he would be willing to take the job for a year with the understanding that at the end of that time if . . . [the Council] were satisfied with the job that he was doing and if he was satisfied with the job then . . . [the Council] would give him an increase in salary." (Timmons, Tr. 178) (Chandler, Tr. 180), (Briggs, Deposition taken on March 8, 1974, PX 22, at 12). (Muir. Tr. 65).[6] Nothing further was said concerning the length of Muir's employment.

The councilmen, however, were very much aware of what they did or did not promise Muir during these interviews. According to Timmons (Tr. 162–163, 177–178), Chandler (Tr. 186), and Briggs (PX 22 at 5, 7, 12) they hired Muir, like any other new employee of Sussex County, for a period of one year, but reserved the first six months or so as a probationary period[7] in which he would be subject to immediate dismissal (Timmons, Tr. 165), (Chandler, Tr. 180–181), (Briggs, PX 22 at 12). In their opinion, Muir was not hired for a term (Briggs, PX 22 at 7); instead he served at the "pleasure of the Council" (Timmons, Tr. 172), (Chandler, Tr. 186). Moreover, they approached the choice of a County Administrator with extra concern since "[T]his was an entirely new concept of Government; [we] were very cautious to not tie the county up with some employee that maybe could not adapt to Sussex County." (Timmons, Tr. 177). However, it was "their idea" that if Muir proved satisfactory at the end of the first year, he would continue on a yearly basis. (Timmons, Tr. 178).

In order to preserve their flexibility, the councilmen did not offer Muir a written contract, although the County Attorney, William Swain Lee, advised them that pursuant to 9 Del.C. § 7003 they had the option to hire Muir by a "written document executed up to 4

4. On March 25, 1971 Muir moved to Sussex County from Newport News (Tr. 6, 119) in part because the obligation of the federal government to pay for his moving expenses would have expired on April 1, 1971 (Tr. 120), but also because he "felt that this [the County Administrator's position] was the closest opportunity to get a job because it had gone on for so long." (Tr. 63, 120). Since retiring from the Air Force he had worked for an automobile dealer in Virginia. (Tr. 3–4).

5. Muir testified that he moved to Sussex County on March 25, 1971 because he was aware of this residency requirement. He also testified on direct and in response to questioning from the Court that he had an indication or had been promised that he

would be hired if he moved to Sussex County (Tr. 6, 120), but on cross examination testified that although he understood that he had to be a Sussex County resident in order to be considered, the decision to move was his personal one. (Tr. 63). Both Timmons (Tr. 172) and Chandler (Tr. 190) testified that they did not make any promises to Muir.

6. Muir testified that Chandler "indicated or asked" him if he would sign a statement or a "contract" to the effect that "it" was for a one-year period. (Tr. 65–66).

7. According to Chandler, Muir's first year salary was "slightly below what . . . [the Council] figured the job should really pay." (Tr. 180).

years in duration." (Timmons, Tr. 163). On June 22, 1971 the County Council unanimously adopted the following resolution (PX 1):

> "Motion by Mr. Chandler, seconded by Mr. Briggs, unanimously carried to place Mr. Herman S. Muir, Jr. on the payroll as county administrator at a salary of $13,500 per year, effective as of July 1, 1971."

Muir knew that he had not been hired for a term (Tr. 100), and in his testimony admitted that he "really didn't have the slightest idea how long . . . he was in hopes it would be until [he] was 65 or older, but [he] really had no knowledge of how long it would be."[8] (Tr. 121). Indeed, six to nine months later, after he had read over the statutory provisions dealing with the post of County Administrator (Tr. 35), he brought to the attention of individual councilmen the fact that he had not been hired for a term. (Tr. 122-123). While the record is silent as to whether Muir requested some action to correct this situation, it is clear that none was taken.

Muir received no complaints, written or oral, concerning his performance in the first year (Tr. 12), nor did any of the councilmen harbor major complaints (Timmons, Tr. 165-166, 174-176), (Chandler, Tr. 182, 190), (Briggs, PX 22 at 7), (Muir, Tr. 19-20). Sometime in 1972, Muir registered in Delaware as a Republican having been a registered Democrat since 1946. (Tr. 7, 64).

In April 1972 (Tr. 72), the Council met with the plaintiff to discuss his salary for the upcoming fiscal year (Muir, Tr. 13) (Briggs, PX 22 at 13) and as a result the Council decided to increase it from $13,500 to $16,000. According to Briggs, the higher salary had nothing to do with the term of plaintiff's employment or the signing of any employment contract. Subsequently, Timmons, president of the Council, wrote Muir a letter dated June 6, 1972 (PX 2) which states in relevant part:

> "This will confirm our recent conversation concerning budget changes for several key employees and yourself for the new fiscal year.
>
> It is the County's policy, as you know, during probation to set salaries of key employees at a rate considerably lower than the salary rate established for the permanent position.
>
> Partly because of this policy and partly because of the fact that we have given you . . . additional responsibility . . . we have decided to set your salary at $16,000 for the fiscal year ending June 30, 1973.
>
> . . .
>
> \* \* \* \* \* \*
>
> The other members of the Council join me in wishing you continued success in working for the betterment of Sussex County during the next fiscal year."

The Court finds that the letter was a hiring of plaintiff for the fiscal year 1973.[9]

In November 1972 three Democrats were elected Councilmen (John Thomas Cannon, Jr., Ralph Benson and Oliver Edward Hill). Briggs was the only "incumbent councilman" defeated because Councilmen Timmons and Chandler were not up for reelection at that time. (Docket Item 30, pre-trial order dated Nov. 6, 1974).[10]

Within a week of the election, Muir met with the three Republican members of the County Council and with William Swain Lee, the County Attorney (Tr. 36), to discuss Muir's dilemma, i. e., the fact that "he had no term at that time." The councilmen did not agree to grant Muir a contract, relying largely on Mr.

---

8. Muir was 50 years old when his case came to trial. (Tr. 3).

9. Chandler testified that he probably did see the letter in early June, 1972. (Tr. 180).

Furthermore he testified that Muir was beyond the normal probation period and that the letter so indicated. (Tr. 181-182).

10. See 9 Del.C. § 7002, subd. w.

Lee's advice that "it wouldn't look very good for the Republicans to be taking this action." (Tr. 36).

Having failed in an attempt to secure a contract, plaintiff next wrote a letter, dated November 13, 1972, to each of the three new Democratic Councilmen. Muir was not sure if he had met any of them before the election but, with the knowledge that they would soon be his superiors, offered his congratulations

and invited each to his office to discuss county business.[11] Neither Benson nor Cannon recalls having received a letter from Muir. (Tr. 237; 207–208).

On December 19, 1972 during a recess of a regular Council meeting (Tr. 83),[12] Muir talked with the three Republican councilmen and Messrs. Benson and Cannon. (Tr. 28). He reported that a person[13] had told him "he was going to go."[14] The two Democratic Councilmen-

11. Letter of November 13, 1972 to Ralph E. Benson. (PX 3). Letter of November 13, 1972 to Oliver Hill. (PX 4). Letter of November 13, 1972 to John T. Cannon. (PX 5).

12. Since during the transition period after the November 1972 election the three Republican councilmen solicited the advice of the newly elected Councilmen, their presence at regular County Council meetings is not surprising. (Tr. 86).

13. Muir did not identify his informant. (Benson, Tr. 219), (Cannon, Tr. 211).

14. At trial, Muir repeated what he claimed had been said to him by Wayne Ellingsworth, Executive Secretary of the Sussex County Democratic Committee, during a conversation at a barbecue sponsored by Melvin Joseph Construction Company on December 15, 1972. (Tr. 20–21). According to Muir, the conversation occurred just before lunch, in Mr. Joseph's front office (Tr. 21–22), was interrupted briefly while Muir took some food and then was resumed in an office adjacent to Mr. Joseph's front office. (Tr. 24). The conversation began when, shortly after entering the company's premises, Muir saw Ellingsworth and asked him "what are you fellows [the Democratic Party in Sussex County] going to do with us?" Ellingsworth allegedly replied that they were going to get rid of Muir first, (Tr. 32) and that this had been decided upon at a meeting of the Sussex County Democratic Committee which the three Democratic Councilmen-elect had attended. (Tr. 27). Ellingsworth also stated that the Party was going to get rid of Mrs. Joanne Dix, an employee of the County Engineer's Office, as well as eighteen employees in the Courthouse because "it was unknown as to whom they had voted for and they did know that they had not taken any active part with the Party in trying to get anyone elected." (Tr. 23). During the second portion of the conversation, Ellingsworth specifically indicated that Muir would be "leaving" between March 1 and July 1; that Mr. Sidwell, the

Director of Finance, would be leaving between July 1 and December 31; that Mr. Henry, the County Engineer, would be leaving between January 1 and December 31, 1974 (Tr. 25–26); and that 50% of the "merit people" in the Courthouse were to be replaced by Democrats. (Tr. 26). In addition, Ellingsworth commented that he had not seen Muir at the Democratic Convention, whereas he had seen Muir at the Republican Convention and that Muir's employment would be terminated because he was a Republican, i.e., the Democrats wanted to replace him "with . . . a man who would pull in votes for the Democratic Party." (Tr. 27–28, 82).

While at trial, Muir elaborated on the conversation with Ellingsworth, he did not indicate whether he reported the full extent of the discussion to those present on December 19, or just those statements pertaining to him. However, both Benson and Cannon testified that Muir neither identified the source of his information nor repeated anything other than the fact that Muir would be the first to go (Cannon, Tr. 211), (Benson, Tr. 219). Briggs also testified to that effect at his deposition. (PX 22 at 8–9). Ronald L. Jenkins, who was Coordinator of the Sussex County Public Employment Program at the time (Tr. 131), and who attended the barbecue with Muir (Tr. 132), testified that he overheard some of the first part of the conversation between Muir and Ellingsworth since he was in Mr. Joseph's front office with them (Tr. 137), and that he overheard some of the second part since he was standing in the hall outside the office adjacent to Mr. Joseph's front office. (Tr. 138). According to Jenkins, Ellingsworth said "You are going to go," (Tr. 133), "We will replace as many as we can." (Tr. 133). Wayne D. Ellingsworth testified that while Muir did ask him what was going to happen to him (Tr. 155), he could not recall telling Muir that Muir was going to go. (Tr. 155). He admitted that he had had two or three drinks (Tr. 158), but Muir testified that the drinks did not "affect" Ellingsworth. (Tr. 28).

elect denied knowledge of any such plan. (Benson, Tr. 220), (Cannon, Tr. 211–212), (Briggs, PX 22 at 8–9).[15]

During the period between the November 1972 election and the end of the year, the three Democratic Councilmen-elect decided to replace William Swain Lee, the County Attorney (attorney to the County Council) with A. Dean Betts. (Hill, Tr. 246–247), (Benson, Tr. 217).

The new Councilmen were sworn in on January 2, 1973, and thereafter until the end of the month the Sussex County Council held five regular-day meetings (Cannon was elected County Council President at the first meeting). (Tr. 196, 273). In addition, there was one special-day meeting at which Muir and the heads of the county departments explained the current status of the County's administration. (Tr. 39–40), (Tr. 253).

Muir apparently had some difficulty establishing rapport with the Democratic Councilmen for, by his own admission, at times when he brought up "County business" or asked questions in relation to "County business" the Councilmen would not say anything to him, giving him the impression that "they didn't know what I was talking about or they didn't want to as an individual reply." (Tr. 38–39, 98). Each of the Democratic Councilmen characterized this lack of rapport, not unexpected during the first few weeks of any new working relationship, somewhat differently: Hill testified that while Muir always answered

questions, Hill did not feel relaxed talking to him (Tr. 254–255); Cannon testified that Muir was "cold natured" toward him (Tr. 207); Benson testified that Muir "didn't seem to want to or care whether he associated with us or not." (Tr. 234).

Since the two of the three Democrats were novice legislators,[16] they desired sufficient time and information in order to familiarize themselves with the business to be conducted at the regular Tuesday County Council meetings. The practice at the time was to distribute just before each meeting (Benson, Tr. 240), (Hill, Tr. 252), (Cannon. Tr. 209), (Timmons, Tr. 171, 173) (Briggs, PX 22 at 10 and 11), an agenda that had been prepared by the Clerk of the County Council. (Tr. 284). While Muir does not recall any complaints by the Democratic Councilmen concerning the timing and contents of the agenda (Tr. 100, 282), Councilman Benson testified that the agenda issue arose in early January (Tr. 239–240), and that he had gone to Muir's office on one occasion specifically to ask for an agenda in advance (Tr. 231–232); Councilman Cannon testified that in mid-January he had gone to plaintiff's office and requested an agenda "at least three or four days before the meeting so we would get our ducks lined up on the day we met," (Tr. 199), and that he had subsequently called Muir with the same request (Tr. 200),[17] but that Muir did not provide the agenda in advance in either instance;[18] and Councilman Hill

15. Benson replied "Hell, no, I don't know nothing about it." (Tr. 220). Cannon replied, "I can't make any statement for the simple reason I am not a sworn councilman, I am just elected," and that he didn't know anything about it. (Tr. 212). Briggs testified at his deposition that the new Councilmen offered a "complete denial." (PX 22, at 9). According to Muir (Tr. 79) and Timmons (Tr. 174), the two Councilmen-elect did not deny knowledge of such a plan.

16. In this regard, Councilman Benson testified that "There were a lot of things that were green to me." (Tr. 240); Councilman Cannon testified that "[he] started out and [he] was a lost ball in tall grass." (Tr. 198). Neither Benson nor Cannon had held

public office before (Tr. 216, 197–198), whereas Hill had served as Sussex County Comptroller from 1964 to 1968 (Tr. 246) and by his own admission had become "fairly familiar with County business." (Tr. 246).

17. Cannon also testified that the idea of receiving an agenda three or four days in advance originated with him and that Hill and Benson agreed that an advance agenda should be provided. (Tr. 200).

18. Cannon never requested a special meeting with Muir because in his opinion an agenda disseminated sufficiently in advance of Council meetings would be information enough. (Tr. 209–210).

testified that while he never asked plaintiff for an agenda in advance (Tr. 248), he had been told that one or both of the other Democratic Councilmen had done so. (Tr. 253). In addition, A. Dean Betts, County Attorney, testified that after the Democratic Councilmen had indicated to him that they needed some advance notice of what was to be considered at the regular meetings, during the second week in January he went to Muir, Mr. Ralph F. Sidwell (Director of Finances) and Mr. William C. Henry (County Engineer) and informed each of them of this request but that no advance agenda was ever forthcoming. (Tr. 259–260; 271–273).

Other incidents which occurred during the month of January 1973 widened the gap between Muir and the Democratic Councilmen. Muir testified that during the second week in January, Councilman Hill came to Muir's office and stated: "Stan, you don't have anything to worry about, here is the way we are going to do it. We are going to tell you who to get rid of and then you are going to have to figure out why and do it." (Tr. 30). Hill denied having made the statement, but testified that he "could have called Mr. Muir a time or two and asked him certain things." (Tr. 254). Furthermore, Muir testified that about this time, Council President Cannon had protested Muir's failure to hire a Mrs. Ellis as Clerk of the Council even though she was not qualified under the hiring procedure for classified employees. According to Muir, Cannon came to his office accompanied by Mrs. Ellis, and demanded that she be hired immediately; Muir acceded to this demand. (Tr. 283–284). Cannon denies taking Mrs. Ellis to Muir's office and directing him to employ her immediately. (Tr. 212).

A final incident occurred on January 30, 1973. That morning, at its regular Tuesday session, the County Council passed a motion which had been drafted by A. Dean Betts (Tr. 274) as the result of discussions in early January with the Councilmen (Tr. 274) concerning the fact that the administrative positions of Sheriff's Secretary, County Administrator's Secretary and Clerk of the Council were "classified," (Tr. 260–261) proposing the amendment of County Personnel Ordinance No. 6 so as to declassify [19] these positions (PX 8) and thereby remove them from the protection of the merit system. The motion was sponsored by Councilmen Cannon, Hill and Benson. (PX 7). Muir did not attend the morning session but around noontime he read the motion and "immediately noticed that it was technically incorrect and at that time decided to bring it up in the afternoon session." (Tr. 41).

A transcript of the afternoon session [20] introduced into evidence at trial reveals that soon after the discussion began, Muir pointed out the technical error in the use in the motion of the term "Secretary-County Administrator" to describe the County Administrator's secretary (PX 8) (PX 21 at 2–6) and suggested a substitute descriptive phrase. In so doing, Muir stated that ". . . I'm not fighting this, I'm just trying to make it technically correct." (PX 21 at 3). Betts accepted this suggestion. (PX 21 at 5). The discussion then shifted to the issue of whether the motion would strip employees presently in these three administrative positions of their classified status; Muir and Betts apparently took opposing views on this issue. (PX 21 at 7–8). Finally, after Betts seemed to express the opinion that the County Council could amend the en-

---

19. The three positions were now to be included in the list of positions covered by "unclassified service" pursuant to Section 2.-20 of Ordinance No. 6, rather than in the list of positions covered by classified service pursuant to Section 2.30.

20. PX 21. The transcript of the afternoon session of January 30, 1973 was made by Emogene P. Ellis, Clerk of the County Council, on October 30 and 31, 1974.

tire classification system by motion,[21] Muir suggested that the Council "get the opinion of the Personnel Board" on the issue [the motion] first, because that was the procedure outlined by state law." (PX 21 at 9–10). Betts replied: "Well, it's my recommendation that we simply amend this [by passing the motion] . . . ." (PX 21 at 9–10),[22] whereupon the Council did so.[23] (Ordinance No. 12).

Each of the three Democratic Councilmen was displeased by Muir's statements: Benson testified that (judging from how Muir spoke, rather than on the basis of what he said), Muir was bitterly opposed to the motion (Tr. 221–222, 225), that Muir's opposition was more than technical (Tr. 242) and that this meeting evidenced a strained or tense relationship between Muir and himself. (Tr. 239). Hill testified that Muir was a little bit offending in his statements (Tr. 249); Cannon testified that Muir offered opposition, albeit peaceful, to changing the classified positions to unclassified status. (Tr. 201–205). According to Betts, "There is no question . . . in [his] mind that . . . [Muir's] attitude was such that he didn't want . . . [the motion] passed." (Tr. 261). However, Betts conceded that this was simply his "subjective opinion" because during the meeting Muir did not utter any absolute statement in opposition to passage of the motion. (Tr. 277).

Following the afternoon meeting, the three Democratic Councilmen held a meeting with Betts in the latter's office. (Tr. 220, 226, 247). The discussion concerned Muir's opposition to passage of the motion declassifying certain positions, (Benson, Tr. 221, 226) (Hill, Tr. 247), as well as the inability of the County Council to obtain an agenda in advance. (Betts, Tr. 279–280). Betts described the Councilmen as "disturbed that the County Administrator could openly apparently protest what they thought was a proper and good amendment." (Tr. 266, 279). The Councilmen reached the decision to terminate Muir from his position (Benson, Tr. 227–228) (Hill, Tr. 247–248) and asked Betts to speak with Muir to ascertain "[h]ow long it would take him to get his files in order and see if he could find another job." (Benson, Tr. 228), (Hill, Tr. 248).

Betts then met with Muir in the latter's office (Betts, Tr. 267) late the same day. Betts testified that in response to Muir's question whether "it was political," he replied "[T]here are many reasons, but perhaps the biggest reason is a lack of communication between you and them." (Tr. 267). Muir testified that Betts responded, "politics is mostly it." (Tr. 33).[24] Reference was made also to the Delaware statute (Home Rule Bill) (Muir, Tr. 33), (Betts, Tr. 267): Muir, who pointed to a copy of the Home Rule Bill lying on his desk as he spoke, commented that he would have to be terminated from his position in accordance with the law. Betts answered that the termination

21. Betts' remark was prompted by this question from Councilman Chandler: "Well, if you can unclassify two people or three people and remove them from the Merit System, simply by doing that, then, why couldn't you unclassify anybody in the whole system?" (PX 21 at 8).

22. At trial, Betts testified that it was unnecessary to refer the proposed motion to the Personnel Board because (1) under state statute, the Personnel Board has advisory powers only, (2) it appeared to Betts [at the time he drafted the proposed motion] that the Personnel Board was perhaps directed by the County Administrator, (3) all

of the Sussex County Councilmen had expressed (at least informally) the opinion that the proposed changes were "proper and for good reason," and (4) it cost money to convene the Personnel Board. (Tr. 262).

23. (PX 21 at 12–13). At this point, Ordinance No. 12 was simply a proposed amendment to the County Personnel Ordinance No. 6. The proposed amendment was then to be the subject of a public hearing, scheduled for March 6, 1973. (PX 8).

24. Betts denied using the word "political" in his response. (Tr. 280–281).

would occur that way. (Muir, Tr. 33), (Betts, Tr. 268). Sometime afterwards, Betts reported back to the three Democrats. (Benson, Tr. 230).

During the next week or so Muir convened the Personnel Board (Tr. 50), an entity created pursuant to 9 Del.C. § 7006(b), "consisting of 3 members appointed by the County Council for terms of 3 years from among the qualified voters of the county . . . [who] shall hold no other county office." Muir "presented to them exactly what had happened on the 30th of January [25] and . . . provided the proposed amendment [Ordinance No. 12] . . . ." (Tr. 50). On direct, Muir stated that he asked the Board how they felt about Ordinance No. 12 and that "they immediately gave . . . [him] the inference that they were certainly against it and Mr. Wilson [Baker] proceeded to dictate a resolution from the Personnel Board that Mrs. Jean E. Johnson took and then in turn typed and then they signed it that evening." (Tr. 50–51). It is unclear whether Muir supplied the Board with further information, or in any way indicated his opposition to the proposed amendment. On cross, he testified that there had been newspaper reports concerning the County Council's meeting of January 30 (Tr. 95); but he also testified that his relating to the Board the fact that he had recommended to the County Council that the Personnel Board should have an opportunity to study the proposed amendment first might have been "a reflection that possibly . . . [Muir] opposed the way

it was being done." (Tr. 96).[26] While Muir acknowledged that "his intent and purpose in reference to the Personnel Board was not to put anything in their mouths . . . because . . . [he] knew there would be repercussions" (Tr. 96–97), the fact of the matter is that the resolution of the Personnel Board (PX 10, dated February 8, 1973) emphasizes the importance of the merit system.[27]

During the same period at the direction of the three Democratic Councilmen (Benson, Tr. 231) Betts drafted a motion of the County Council dismissing Muir from the County Administrator's post. (Betts, Tr. 268) (PX 6) (Tr. at 37). Apparently, the three Democratic Councilmen did not discuss their decision with Timmons and Chandler (Timmons, Tr. at 168), (Chandler, Tr. 183) (Cannon, Tr. 212), although both of the Republican Councilmen had a feeling that something like this would occur. (Chandler, Tr. 183), (Timmons, Tr. 167).[28] At the regular Tuesday meeting on February 13, 1973, Benson moved that Muir be terminated immediately as County Administrator, with salary to be paid to March 1, 1973 plus any accumulated vacation. (PX 6). Benson read a statement which contained the following accusations and observations of the Democratic Councilmen [29] (PX 6):

1. The new [Democratic] Councilmen had not developed any rapport with Muir.

2. There had been a distinct absence of communication.

---

25. On cross examination, Muir testified that he told the Personnel Board that at the January 30 meeting he had "proposed" to the County Council that the Personnel Board consider the matter first. (Tr. 96).

26. Muir did testify that at the time he thought Ordinance No. 12 "was directed at myself" (Tr. 50) and furthermore, that it "caused" Gail Steel, (Tr. 93) Mr. Muir's and Mr. Sidwell's secretary, to resign. (Tr. 93–94).

27. PX 10 states in relevant part:

(3) We do not feel the proposed Ordinance No. 12 will comply with the intent of Ordinance No. 6 and with the Sussex County Personnel System and Ordinances Manuel. (sic).

28. Timmons testified that he had read "things" in the newspaper and [had heard] "some people, members talking about it and never being brought up and never mentioned in County Council." (Tr. 168).

29. The statement began, "Since we, the majority, took office as members of the County Council. . . ."

3. A total lack of confidence existed.

4. No effort was made to discuss any matters with . . . [the Democratic Councilmen] except during the Council meetings. The only two meetings between . . . [the Democratic Councilmen] and the Administrator occurred at . . . [the] request . . . [of the Democratic Councilmen] in an effort to familiarize . . . [themselves] with the many matters pending and the vast scope of . . . [their] responsibilities. None were promoted by the Administrator.

5. In the matter involving what . . . [the Democratic Councilmen] believe to be proper reclassification of some employees, the Administrator actively opposed the changes [the Democratic Councilmen] believe his role should be one of promoting . . . [their] policies, whether he agrees or disagrees.[30]

Continuing, Benson stated that, on the basis of discussions with County Attorney Betts, the Councilmen were of the opinion that Muir had no fixed term of office, served at the pleasure of the Sussex County Council, and that the proce-

dures in the Home Rule statute concerning notice and hearing did not apply.[31] A vote was taken on the motion. The three Democratic Councilmen were in favor and the two Republicans were opposed. (PX 6). At trial Benson admitted that up to that date the three Democrats had never explicitly complained to Muir about his performance of any of his duties as County Administrator. (Tr. 235–236).[32]

In so far as is relevant to this case, the following events transpired soon after February 13. First, the County Council chose Ralph F. Sidwell, until then the Director of Finance of Sussex County, as Muir's temporary replacement. Second, on February 21, Muir wrote Cannon, President of the Sussex County Council, to request a public hearing on his dismissal under the procedures of 9 Del.C. § 7003(b). (PX 12). The same day Muir wrote Sidwell, filing a request through him with the Sussex County Personnel Board, for a hearing on the issue "open to the public," pursuant to 9 Del.C. § 7006(c)(8) and Article 12, Tenure of Service, Sussex County Personnel Ordinance No. 6. (PX 11). Sidwell replied in a letter that he had turned the matter over to Mr. Betts. (Muir, Tr. 54). Muir did not personally

---

30. The record is ambiguous as to whether on February 13 the three Democratic Councilmen were aware of the resolution adopted by the Personnel Board on February 8 objecting to the proposed amendment of the Sussex County Personnel Ordinance. Mr. Wilson Baker did not personally bring the Board's opposition to the attention of the Councilmen until the public hearing held on March 6, 1973.

31. Minutes of the ensuing discussion of the motion, if any, are not part of the record in this case. However, A. Dean Betts, in his letter of March 8, 1973 to Nicholas H. Rodriguez at Pages 2–3 indicated that the minutes of the February 13 meeting, which "very simply states (sic) that the services of Mr. Muir are terminated effective immediately," were "circulated and approved at the subsequent meeting of the County Council." Docket Item 30, entry f (7).

32. Extensive publicity surrounded the action of the Council both before and after Febru-

ary 13, 1973. In the December 23, 1972 issue of the Morning News a page one article highlighted plans of the Sussex County Democratic Party to conduct "an old-fashioned courthouse cleaning," to include replacement of Muir "sometime between March and July." (PX 20). In the February 7, 1973 issue of the Morning News, a front page article by R. M. Williams, Sussex Bureau Chief, appeared commencing with the statement that the "new Democratic majority . . . has decided to fire . . . Muir," and containing Muir's reply that "he intends to challenge his dismissal 'in the courts, if necessary.'" (PX 19). Articles concerning the action of the Council on February 13, appeared in the February 14 issue of the Morning News, (PX 17, Tr. at 128); in the Sussex County Post (February 15, 1973) (PX 18), and in the Daily Eagle (February 14, 1973). (PX 16). In addition, television station WBOC reported these events. (Muir, Tr. 62).

receive a written reply from Cannon. (Tr. 54). Finally, on March 6, 1973 the Sussex County Council held a public hearing with respect to the amendment to Personnel Ordinance No. 6,[33] at which time Betts stated publicly that Muir was entitled to neither a public hearing before the Council nor a public hearing before the Personnel Board. (DX 4). The amendment was then unanimously adopted by the Sussex County Council. (DX 3 at 9–10).[34]

Frustrated in his efforts to convince the County Council that he should be reinstated, Muir began to look for other employment. He ultimately contacted 38 prospective employers without receiving a job offer.[35] (PX 13), (DX 1), (DX 2), (Docket Item 30 [pre-trial order], entry f(9) and attachment). (Tr. 56). Some of the applications inquired whether Muir had ever taken legal action against a prior employer (Tr. 57), which Muir had done by filing this suit on June 28, 1973 (Docket Item 1); furthermore, Muir testified that four prospective employers discussed the pending suit.[36] Whenever Muir was required to state the reasons for his dismissal, he summarized them by using the word "political." (Tr. 58, 106).

## II. THE LAW

■ In his post trial Proposed Findings of Fact and Conclusions of Law, plaintiff withdrew his claims for damages and injunctive relief under 42 U.S. C. § 1983 [37] against the County Council of Sussex County, the claims for damages under 42 U.S.C. § 1983 against the individual members of the County Council in their official capacities, and all claims pursuant to federal and state law against Councilmen Timmons and Chandler. The Court grants this motion. Remaining for disposition are (A) plaintiff's claim for damages under 42 U.S.C. § 1983 against Councilmen Cannon, Benson and Hill in their individual capacities, (B) plaintiff's claim for injunctive relief under 42 U.S.C. § 1983 against Councilmen Cannon, Benson and Hill in their official capacities; (C) plaintiff's claim for lost wages, damages and reinstatement against the Sussex County Council pursuant to 9 Del.C. § 7003(b) and pursuant to 9 Del.C. § 7006(c)(8), as implemented by Person

---

33. A transcript of the hearing, made by Emogene P. Ellis, Clerk of the County Council on October 30 and 31, 1974, was introduced into evidence as DX 3.

34. Apparently, Timmons was not present at the March 6, 1973 hearing and vote on Ordinance No. 12. His vote is not recorded in the transcript of the hearing (DX 3 at 9–10), nor is there anything in his trial testimony to indicate that he was present.

35. It appears that plaintiff began applying for another job as early as mid-February 1973. (See PX 13, question 1, Column C). Plaintiff had 10 interviews and received 17 rejections (PX 13, question 2, question 4). On cross examination he identified 18 businesses in addition to the Delaware Employment Office which in his opinion (based on newspaper advertisements, etc.) had had bona fide job openings at the time. (Tr. 102–103). However, Muir received rejection letters for both "advertised" and "unadvertised" positions. (Tr. 103–104) (DX 1), (Tr. 105), (DX 2).

36. These four were (1) an "executive" at WBOC Radio/Television Station in Salisbury (Tr. 58); (2) Farmers Bank (Tr. 107–108); (3) Delmarva Advisory Council (Tr. 108); (4) City of Salisbury, Md. City Council. (Tr. 108–109). In addition, according to Muir, these last three of the employers indicated (independent of the explanation given in their formal rejection letters) that a reason for their rejection of Muir was his suit against Sussex County Council. (Tr. 107–109), (Tr. 125–126). In other instances, Muir indicated that the "termination" was a "possible" cause of the rejection of his job application. (Tr. 113–114).

37. 42 U.S.C. § 1983 states in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

nel Ordinance No. 6, Ordinances of Sussex County Council.[38]

A. *Section 1983 Claims For Damages Against Cannon, Benson and Hill In Their Individual Capacities.*

■ In order for plaintiff to recover damages under 42 U.S.C. § 1983 against the three Councilmen in their individual capacities, he must have established by a preponderance of the evidence that each defendant in bad faith exercised his discretion in the performance of his official duties to deprive plaintiff of a constitutional right. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Patton v. Conrad Area School District, 388 F.Supp. 410, 417 (D.Del.1975). Plaintiff asserts violations of four constitutional rights: (1) his right to procedural due process, (2) his First Amendment rights to free speech and freedom of association, (3) his right to equal protection and (4) his right to substantive due process.[39] The Court will first decide which of these constitutional rights, if any, were violated, and then will pass on the issue of bad faith.

(1) Procedural Due Process

Plaintiff maintains that his right to procedural due process was violated by the February 13, 1973 resolution terminating as of March 1 without a prior hearing his employment which otherwise would have continued until at least June 30, 1973 because (1) he had a protectable property interest, i. e., a term of employment that could not be summarily abolished and (2) the language of the resolution seriously impaired his constitutionally protected "liberty to pursue other employment" by casting his character in disrepute.

■ The pretermination hearing guaranteed by procedural due process in order to protect a property interest is required only if the state, or persons acting under color of state law, act to deprive an individual of "the security of interests that . . . [he] has already acquired in specific benefits." Board of Regents v. Roth, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972).[40] A property interest in a benefit exists either by reason of an enforceable express oral or written contract or by reason of existing understandings that, as interpreted by the applicable state law and as regarded substantively under that law, create a legitimate claim of entitlement to the specific benefit. Roth, 408 U.S. at 577, 92 S.Ct. 2701. That is, a mutually explicit understanding between the parties must exist which may, however, be implied from "the promisor's words and conduct in the light of the surrounding circumstances." Perry v. Sindermann, 408 U.

---

38. This Court will exercise its jurisdiction to dispose of the claims arising under Delaware law even though Sussex County Council is not a "person" for purposes of monetary or injunctive relief pursuant to 42 U.S.C. § 1983. *See* Rochester v. Baganz, 365 F.Supp. 179, 184 (D.Del.1973), rev'd on other grounds, sub. nom. Rochester v. White, 503 F.2d 263 (C.A. 3, 1974); Reed v. Philadelphia Housing Authority, 372 F.Supp. 686, 694–698 (E.D.Pa.1974); Moore v. County of Alameda, 411 U.S. 693, 710–717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

39. Clearly, the adoption of a formal resolution by the Sussex County Council satisfies the requirement of 42 U.S.C. § 1983 that defendants must have acted "under color of state law" so as to be liable for monetary damages in their individual capacities for violation of any or all of the constitutional rights alleged.

40. In *Roth,* plaintiff was hired as an assistant professor at a state university for a fixed term of one academic year but subsequently the university notified him, in accordance with regulation and practice leaving to university officials the total discretion to decline to renew his contract for another academic year without listing any reason therefor, that he would not be rehired for the next academic year. The Supreme Court reversed the summary judgment of the lower court ordering the university officials to provide plaintiff with reasons and a hearing because the Supreme Court held that he had no property interest in another year's employment.

S. 593, 601–602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972).[41] At this point the Court is obligated to state the relevant Delaware law[42] and to review the evidence to decide whether Muir had an implied contract with Sussex County running from July 1, 1972 to June 30, 1973 or perhaps beyond.

To begin with, this Court must examine the statutory provisions establishing the County Administrator's position. The Delaware Legislature has clearly authorized the Sussex County Council to hire the County Administrator for a specific term. 9 Del.C. § 7003(a) expressly states that "[T]he County Council shall appoint a County Administrator . . . for a term, not exceeding 4 years and fix his compensation;" and the companion section, 9 Del.C. § 7003(b) (Removal from office), is prefaced by the sentence "[T]he County Council may remove the County Administrator from office before the expiration of his term, but only in accordance with the following procedures

. . . ."[43] However, defendants contend that these two provisions give (and that the legislature intended them to give), the Sussex County Council the option to hire the County Administrator for a term, in no case to exceed four years, or not to hire the Administrator for a specific term, in its unfettered discretion.

■ This Court must reject the defendants' argument for several reasons. First, the legislature must have realized that if such were the option, the Administrator would never be hired for a term, thereby rendering nugatory the provisions in 9 Del.C. § 7003(b) that are designed to regulate the removal process. Provisions of a statute must be read together and not in vacuo,[44] and the plain meaning of the words of a statute is its preferred interpretation. Second, other Sussex County government reorganization provisions enacted simultaneously with 9 Del.C. § 7003 either specify that an official is to serve at the will of the

41. In *Perry*, plaintiff had been employed by a state junior college for four successive years, under a series of one year contracts, but the Board of Regents voted not to offer him a new one year contract following both plaintiff's public testimony adverse to the Board before the state legislature as president of the Texas Junior College Teachers Association and his apparent sponsorship of a critical newspaper advertisement. The Supreme Court held that his allegation of a de facto tenure system, based upon junior colleges' faculty guide and written statewide guidelines, was sufficient to preclude grant of summary judgment in favor of the defendant on the issue of a "legitimate claim of entitlement to renewal of contract", i.e., a property interest in another one year teaching contract.

42. Delaware law clearly applies to the employment relationship between the Sussex County Council and an individual employee who is a Delaware resident.

43. 9 Del.C. § 7003(b) reads:
"(b) Removal from office.—The County Council may remove the County Administrator from office before the expiration of his term, but only in accordance with the following procedures:

1. By affirmative vote of a majority of all the members of the County Council upon adoption of a preliminary resolution which shall state the reason for the removal. A copy of the resolution shall be delivered promptly to the County Administrator.

2. Within 10 days after a copy of the resolution is delivered to the County Administrator, he may file with the County Council a written request for a public hearing. This hearing shall be held at a special County Council meeting not later than 30 days after the request is filed. The County Administrator may file with the County Council a written reply not later than 5 days prior to the hearing. The County Administrator shall be permitted to appear in person at the hearing in lieu of a full written reply to the charges made, and present his case with witnesses as the circumstances may require.

3. The County Council may adopt a final resolution of removal, which may be made effective immediately, by affirmative vote of a majority of all the members at any time after 10 days from the date when a copy of the preliminary resolution was delivered to the administrator, if he has not requested a hearing."

44. See discussion in text *infra* at 931 for application of this principle by the Delaware courts.

Council or heavily imply this. 9 Del.C. § 7005(b) (Department of Laws) states that "The County Attorney shall be appointed by the County Council. The County Attorney shall serve at the pleasure of the County Council." [45] In addition, 9 Del.C. §§ 7002(h) (Clerk of the County Council) states, "[T]he County Council shall appoint and fix the salary of a Clerk of County Council . . .," and 9 Del.C. § 7004(b) (Department of Finance) states "[T]he Director of Finance shall be the head of the Department of Finance. The County Council shall appoint the Director of Finance and fix his compensation." Thus, in the face of other statutory provisions either conclusively providing for service at the pleasure of County Council or more than arguably open to such an interpretation, this Court is hesitant to read out the phrase "for a term, not exceeding 4 years" in 9 Del.C. § 7003(a) which would be the necessary consequence of adopting the defendants' contention that the County Council had the unfettered discretion to set a term of service for Muir or not.

Delaware courts have expressly subscribed to these two principles of statutory construction in cases involving closely analogous issues of government-employee relations. In Collison v. State ex rel. Green, 2 A.2d 97 (Sup.Ct.1938), the Delaware Supreme Court upheld the governor's removal of three members of the Industrial Accident Board who had been appointed for a statutory term of six years. Citing other language in the statute that "the Governor may remove any member of said Board with or with-

out cause," *id.* at 99, 102–103, the court obviated the necessity to decide whether removal from a fixed term was unconstitutional under Delaware's constitution because, in the court's view, the statute merely provided for a maximum term of six years with the officials serving at the governor's pleasure during the term. Thus, the court followed the "principle of construction which is familiar and of universal acceptance" that ". . . 'effect if possible must be given to every word and phrase of the statute so as to render it a harmonious whole.' " [46] The same approach has been taken by this Court in the instant case.[47]

More importantly, the Supreme Court of Delaware has decided whether a high ranking county official in a position similar to that of the Sussex County County Administrator serves for a term or at will. In the recent case of Rawlins v. Levy Court of Kent County, 235 A.2d 840 (Sup.Ct.1967), the Supreme Court considered "the right of the Levy Court of Kent County to remove the Kent County Director of Civil Defense who had been appointed by the predecessor Levy Court for a two-year term." Plaintiff had been appointed at the pleasure of the predecessor Levy Court (the statute did not prescribe a term of office) [48] but, after the general election, the lame duck Levy Court members pursuant to resolution appointed him for a two year term. Soon after the new Levy Court took office, it passed a resolution dismissing him. Thereafter, it refused to grant him a hearing available under Delaware law to officials removed

---

45. Likewise, Assistant County Attorneys, who shall be appointed by the County Council if necessary, serve at the pleasure of the County Council. 9 Del.C. § 7005(c).

46. 2 A.2d at 102.

47. A similar approach was taken recently by the Seventh Circuit Court of Appeals in Adams v. Walker, 492 F.2d 1003 (C.A. 7, 1974) a case involving the procedural due process rights of a state official appointed to a six year term of office as Chairman of the Illinois Liquor Control Commission who

was removed by the governor from office pursuant to the latter's power under the state constitution. The majority opinion cited as its first reason for upholding the governor's action the fact that the removal power had to be construed along with the statute because Illinois courts would do the same, *id.* at 1006, and as the second reason the explicit statutory language exempting plaintiff's position from civil service protection. *Id.*

48. See former 20 Del.C. § 3107(a)

by the Levy Court.[49] The Supreme Court of Delaware rejected plaintiff's contention that he had a two year term and instead followed the general rule that "[T]he term of an appointed office, not prescribed by statute, expires with the expiration of the term of the appointing body," citing Annotation, 149 ALR 342; 43 Am.Jur., Public Officers § 160 [63 Am.Jur.2d, Public Officers, § 156], 37 Am.Jur., Municipal Corporations, § 237 [46 Am.Jur.2d, Municipal Corporations, § 255]. The Court emphatically stated that "since the statute prescribed no term for the office of Director, the outgoing Levy Court could not legally supply one which would be binding on its successor." *Id.* at 841.

Turning from the law briefly to the facts, the Court finds that the Sussex County councilmen in June 1972 did not wish to execute a guaranteed contract with Muir which would obligate them for more than one fiscal year. (Tr. 163). Although Timmons (Tr. 172), Chandler (Tr. 186), and Briggs (PX 22 at 7) each maintained that the Council hired Muir and retained him after the first fiscal year on the traditional basis of continued service at the pleasure of the Council,[50] each also admitted that Muir was hired for the fiscal year running from July 1, 1972 to June 30, 1973 (Timmons, Tr. 178), (Chandler, Tr. 188), (Briggs, PX 22 at 5) and was subject to dismissal only if this were "in the best interests of the County" (Timmons, Tr. 172, 163) or if there were "justification" (Chandler, Tr. 188).

Thus, the councilmen contemplated that the County Administrator would continue on a yearly basis unless otherwise terminated.

■ This Court has not disregarded the fact that from the beginning the Sussex County Council, very much aware of 9 Del.C. § 7003, attempted to circumvent its literal application. However, the continued flexibility that the Sussex County councilmen thought they had retained beyond a probationary period by not entering into a formal contract with Muir is analogous to the flexibility the defendants in Perry v. Sindermann thought they had retained by not establishing a formal tenure system. Furthermore, even though Muir did not believe that if the Democrats gained control of the County Council they would necessarily want to honor his employment arrangement with the predecessor Republican majority, he held his position pursuant to 9 Del.C. § 7003 which expressly provides for a pretermination hearing if the County Council moves to dismiss the County Administrator before the end of a term of employment. The Court can not overlook the law that applies to the employment arrangement[51] and therefore finds that plaintiff was serving a one year term running from July 1, 1972 to June 30, 1973 at the salary stated in the letter of June 6, 1972, (PX 2), when he was terminated on March 1, 1973.

■ The Court also finds that since the Sussex County Council had the pow-

49. See former 9 Del.C. § 4115.

50. Even though the councilmen stated that *all* employees served at the pleasure of the Council, it is inconceivable that they were unaware of the protection instituted by the merit system for *classified* employees from dismissal solely for political reasons. Sussex County Personnel Ordinance No. 6, § 12.60.

51. See also Chung v. Park, 369 F.Supp. 959, 964–966 (M.D.Pa.1974) where the court granted plaintiff tenure because the defendants had failed to follow exactly the rules they had promulgated designed to prolong probationary status beyond the academic

year in which tenure otherwise would be granted automatically. In Mahoney v. Philadelphia Housing Authority, 13 Pa.Cmwlth. 243, 320 A.2d 459 (1974), cert. denied, 417 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975), the court held that where a public authority did not have the statutory authority to enter into express or implied employment contracts, the fact that the agency had *promulgated regulations providing for notice prior to dismissal did not mean that under* Pennsylvania contract law, as required by the *Roth* and *Perry* decisions, the dismissed employee had a contract right enjoying procedural due process protections.

er *not* to rehire the plaintiff for another "term" after the expiration of the one year contract running from July 1, 1972 to June 30, 1973 and since the majority of the present Councilmen would have voted *not* to rehire Muir, Muir had no legitimate expectation of employment beyond June 30, 1973. (Muir, Tr. 112). Perry v. Sindermann, 408 U.S. at 601–603, 92 S.Ct. 2694.

Since Muir was employed under a one year implied contract defined by 9 Del. C. § 7003(a), he had the procedural due process right to a pretermination hearing before the Sussex County Council could constitutionally dismiss him as of March 1, 1973. *Roth*, 408 U.S. at 569–570, 570 n. 7, 92 S.Ct. 2701. Therefore the action of the Sussex County Council deprived Muir of his procedural due process right, and the three defendants are liable both for the salary Muir would have earned and other benefits he would have received as County Administrator from March 1, 1973 to June 30, 1973, inclusive, unless each defendant has established his immunity from that liability. Patton v. Conrad Area School District, *supra*.

■ Turning to the question of the qualified immunity that each defendant may enjoy as a public official who exercised his discretion in good faith, the Court finds instructive the definition of "good faith" contained in Young v. Coder, 346 F.Supp. 165, 169 (M.D.Pa.1972), and Smetanka v. Borough of Ambridge, Pennsylvania, 378 F.Supp. 1366, 1373 (W.D.Pa.1974). See also Scheurer v. Rhodes, 416 U.S. 232, 245, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), Fidtler v. Rundle, 497 F.2d 794, 801 (C.A.3, 1974). The defendants have not lost their qualified immunity because they acted reasonably and in good faith by relying on the advice of their attorney.

Therefore, the Court finds that the defendants Cannon, Benson and Hill are not liable for monetary damages.

■ Plaintiff also contends that he had a procedural due process right to a hearing before the effective date of his termination on March 1, 1973 because the language of the February 13, 1973 resolution seriously impaired his liberty to procure other employment by casting his character in disrepute. The Court must reject plaintiff's contention.

In Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court held that liberty, defined in part as the right of the individual to contract and to engage in an occupation, could be infringed if the government dismisses an employee based on a charge that calls into question his good name, honor or integrity,[52] (thereby causing serious damage to his standing and associations in the community), or in the absence of such a charge, if the government imposes a stigma or other disability that "forecloses" his freedom to take advantage of employment opportunitites,[53] as for example, by revoking a license necessary to the practice of his profession or by invoking regulations to bar him from all other public employment. Roth, 408 U.S. at 573–574, 92 S.Ct. 2701, Pavlov v. Martin, 381 F.Supp. 707, 709–710; (D.Del., 1974); Trivits v. The Wilmington Institute, 383 F.Supp. 457, 461–462. (D.Del. 1974).

The Sussex County Council did not impose a stigma or other disability that foreclosed Muir's freedom to take advantage of employment opportunities. It is apparent from the February 13 resolution that the Democratic Councilmen dismissed Muir because he could not develop the required rapport with them,

52. 408 U.S. at 573, 92 S.Ct. 2701. As pointed out by the Seventh Circuit in Adams v. Walker, 492 F.2d 1003, 1007–1008 (C.A. 7, 1974), the Supreme Court in support of this proposition cited prior decisions involving charges of dishonesty and immorality. Thus, liberty is infringed only if the charge

is "something considerably graver than a charge of failure to perform a particular job, lying within the employee's power to correct." Russell v. Hodges, 470 F.2d 212, 217 (C.A. 2, 1972) (Friendly, Chief Judge.)

53. *Roth*, 408 U.S. at 573, 92 S.Ct. 2701.

had failed to provide them with advance agenda, and had opposed the passage of the ordinance amending the Sussex County Personnel Rules. The apparent underlying psychological cause of Muir's inability to develop a rapport with the newly elected Democratic councilmen arose out of his past affiliation with the Republican party and this underlying cause was continuously emphasized by the news media.[54] Thus, nothing that the Sussex County Council did produced the grave consequences which the Supreme Court in *Roth* described as a deprivation of liberty, and in fact, Muir alone, by suing in this court probably damaged his chances for employment with other possible employers.

(2) First Amendment Rights

Plaintiff next contends that his First Amendment rights to freedom of speech were infringed by the dismissal in that defendants voted to terminate his employment because he had objected to and was critical of the passage of County Ordinance No. 12 (amending Ordinance 6, the personnel rules of Sussex County).

 Most government employees may not as a condition of employment be required to forfeit First Amendment rights to speech which they possess as private citizens. Perry v. Sindermann, 408 U.S. 593, 597–598, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). However, a government employee may be required to forfeit his right to publicly and truthfully criticize his superiors if he occupies a high ranking position which requires continued loyalty to them and if such criticism *actually* undermines their working relationship, thereby impairing

the public interest in the efficient operation of government. Pickering v. Board of Education, 391 U.S. 563, 568, 570 n. 3, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Illinois State Employees Union, Council 34 v. Lewis, 473 F.2d 561, 574 (C.A.7, 1972), cert. denied, 410 U.S. 943, 93 S.Ct. 1370, 35 L.Ed.2d 609 (1973); Indiana State Employees Association, Inc. v. Negley, 501 F.2d 1239, at 1239, 1242 (C.A.7, 1974); Gould v. Walker, 356 F. Supp. 421, 425–426 (N.D.Ill.1973). See Alomar v. Dwyer, 447 F.2d 482 (C.A.2, 1971) (per curiam), cert. denied, 404 U. S. 1020, 92 S.Ct. 683, 30 L.Ed.2d 667 (1972). The necessity for and extent of such forfeiture is determined by balancing the competing interests of the employee and the public in each instance.[55] Once the balance is struck, the government may not demonstrably retaliate against the employee for the exercise of his right to free speech or association and attempt to camouflage that retaliation by after the-fact-make-weight reasons that would otherwise justify his dismissal. Skehan v. Board of Trustees of Bloomsburg State College, 501 F.2d 31, 39 (C.A.3, 1974); Commonwealth of Pennsylvania ex rel. Rafferty v. Philadelphia Psychiatric Center, 356 F.Supp. 500, 507, 509 (E.D.Pa.1973); Simard v. Board of Education of Town of Groton, 473 F.2d 988, 995 (C.A.2, 1973).

 By the same token, however, the Constitution does not protect from dismissal an incompetent public employee if he is dismissed for *any* reason other than demonstrable retaliation for exercise of his First Amendment rights. Smetanka v. Borough of Ambridge, Pennsylvania, 378 F.Supp. 1366, 1378–1379 (W.D.Pa.1974); Illinois State Em-

---

54. *Morning News*, "Democrats' new broom seen sweeping in on Sussex merit system," December 23, 1972 (continuation from page one, second column) (PX 20); *Morning News*, "Sussex political ax falls on Stan Muir," February 7, 1973 (page one, third column) (PX 19); *Sussex County Post*, "It's official! Muir Fired by County Council" February 15, 1973 (page one, column one) (PX 18); "Sussex Democrats dismiss Muir; he vows legal battle," *Morning News*, February 14, 1973 (PX 17); *Sussex Daily Eagle*, "Council Votes to Fire Muir," February 14, 1973 (continuation from page one) (PX 16).

55. *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731; *Illinois State Employees Union, Council 34*, 473 F.2d at 572–573.

ployees Union, Council 34 v. Lewis, 473 F.2d 561, 579 (C.A.7, 1972) (Campbell, D. J., concurring), cert. denied 410 U.S. 943, 93 S.Ct. 1370, 35 L.Ed.2d 609 (1973).

Turning to the instant case, it is apparent that a major source of the controversy between Muir and the Democratic controlled Sussex County Council was the uncertain role each had pursuant to the recently enacted provisions of 9 Del.C. §§ 7001–7006 in promulgating and administering county policy in general and personnel rules in particular. 9 Del.C. § 7003 states that the County Administrator shall be hired on the basis of his administrative expertise and specifically provides that he shall appoint and suspend county employees (9 Del.C. § 7003(d)(1)), "direct and supervise the administration of all departments, offices, and agencies of the county," (9 Del.C. § 7003(d)(2)), and "have the right to take part in discussion at all County Council meetings." (9 Del.C. § 7003(d)(3)). However, by following the procedure prescribed in 9 Del.C. § 7003(b) he is subject to removal before the expiration of his term of office by the County Council. In addition, the enumeration of his duties in 9 Del.C. § 7003(d) is preceded by the caveat that he shall "be responsible to the County Council for the proper administration of all the affairs of the County which the County Council has authority to control," and that his duties and powers are "under the direction of the County Council." With regard to personnel rules and administration, 9 Del.C. § 7006(c)· provides that the County Administrator shall prepare personnel rules and amendments, refer them to the Personnel Board for its recommendation, and then "when approved by the administrator, the rules shall be proposed to the County Council, and the County Council may by ordinance adopt them

with or without amendment." On the other hand, 9 Del.C. § 7006(c)(10) states that "employment or dismissal of county employees shall be subject to the approval of the County Council, in its discretion." [56]

For the purposes of resolving the question whether Muir had unfettered First Amendment rights of free speech to even criticize the procedure by which the County Council intended to amend the personnel ordinance, the Court must consider the broad allocation of power and responsibilities between the County Administrator and the Sussex County Council. While the County Administrator has a right to contribute to the deliberations of the County Council, he also has the duty to faithfully execute the decisions of the Council, which could refuse to renew his term of office or which could dismiss him before the end of the term by following the procedures prescribed in 9 Del.C. § 7003(b), should he fail to do so. Consequently, the Court is of the opinion that the County Administrator, who is the head of the entire Sussex County administrative heirarchy, must work with the County Council so continuously and closely that his post requires loyalty to the Council of a nature described by the Supreme Court in *Pickering, supra,* 391 U.S. at 570 n. 3, 88 S.Ct. 1731 (1968). Muir's opposition to both the procedure for amending the personnel ordinance and to the substance of the amendments as proposed by the County Attorney and the three Democratic Councilmen breached that loyalty enough to render his dismissal constitutional. In concluding that there was a breach, the Court has taken into account the perspective of the three Councilmen in January 1973, who even before this opposition for Muir, did not trust him, because under the *Pickering* rule the public's interest in the efficient operation of government

---

56. The County Attorney, who heads the Department of Law [which "provide(s) legal advice to the County Council, County Administrator . . ."] and who presumably is

a disinterested interpreter of these otherwise conflicting statutory provisions, serves at the pleasure of the County Council. 9 Del.C. § 7005(a), (b).

may be protected despite the fact that the attitude of an elected superior in these circumstances may have been somewhat arbitrary or less than conciliatory. For the above reasons, the Court concludes that Muir was not dismissed in violation of his First Amendment rights to free speech.

 Plaintiff also contends that his First Amendment right to freedom of association was infringed since he was dismissed *solely* because he was a registered Republican. The Court rejects this contention. Plaintiff failed to prove by a preponderance of the evidence that he was dismissed solely for that reason. The Court finds that there were other reasons for his dismissal such as his inability to communicate with the Democratic Councilmen, his opposition to the procedure for amending the Personnel Ordinance and to the substance of those changes, as well as his convening of the Personnel Board.

### (3) Equal Protection

The Court perceives no difference between plaintiff's claim regarding equal protection of the law and his claim regarding violation of his First Amendment right to association, and therefore holds that the defendants' action did not violate Muir's equal protection rights.

### (4) Substantive Due Process

 Plaintiff contends that his dismissal violated his right to substantive due process in that it was done arbitrarily and without reason. Since substantive due process protection attaches to Muir's property interest, Jeffries v. Turkey Run Consolidated School District, 492 F.2d 1, 3–5 (C.A.7, 1974); Simard v. Board of Education of Town of Groton, 473 F.2d 988, 992 n. 6, 994–995 (C.A.2, 1973); Collins v. Wolfson, 498 F.2d 1100, 1102–1104 (C.A.5, 1974); Williams v. Caesar Rodney School District, C.A. 4501 (D.Del. Aug. 3, 1973) slip op. at 8, the Court must reject plaintiff's contention because Muir's contract rights, if any, are defined by Delaware state law,[57] and pursuant to Delaware law he may not be removed from his position solely because of his political affiliations,[58] but he may be dismissed before the end of his term by following the procedure prescribed in 9 Del.C. § 7003(b).[59] Therefore, in view of the fact that Muir was not removed solely because of his political affiliation he had no property right protectable by substantive due process review for arbitrary state action.

### B. *Injunctive Relief Pursuant to § 1983 Against Cannon, Benson and Hill In Their Official Capacities.*

 The Court declines to grant injunctive relief against these three defendants in their official capacities because plaintiff's demand for reinstatement for breach of his contract running from July 1, 1972 to June 30, 1973 is moot. Skehan v. Board of Trustees of Bloomsburg State College, 501 F.2d 31, 45 (C.A.3, 1974).

### C. *Claims Arising Under State Law.*

Plaintiff seeks monetary relief and reinstatement against Sussex County Council under Delaware law because he alleges that the following statutory provisions were violated: (1) 9 Del.C. §

---

57. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 601–602, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Arnett v. Kennedy, 416 U.S. 134, 151–154, 94 S.Ct. 1633, 40 L.Ed.2d 15 (Rehnquist, J.) 164–167 (Powell, J.) (1974).

58. Sussex County Personnel System and Ordinances, Article 15, § 15.10 (enacted pursuant to 9 Del.C. § 7006(c)) provides in relevant part:

"No person shall be appointed to, or removed from, or in any way favored or discriminated against with respect to any county position or appointive county administrative office because of . . . political . . . affiliations."

59. In contrast, 59 Del.C. § 5949 (1968 Supp.) provides that an employee in the state classified civil service may be discharged for "cause" only.

7003(b); (2) 9 Del.C. § 7006(c)(8), as implemented by Ordinance No. 6, Article 12; (3) 9 Del.C. § 7006(c)(8), as implemented by Ordinance No. 6, Article 15.-10.

 (1) The Court concludes that 9 Del.C. § 7003(b) was violated because Muir was serving a one year term running from July 1, 1972 to June 30, 1973 and therefore could only be removed by the Sussex County Council pursuant to the procedure outlined in 9 Del.C. § 7003(b). Since Sussex County has waived sovereign immunity in 9 Del.C. § 7001(a) (1970 Supp.), see Varity Builders, Inc. et al. v. Polikoff, 305 A.2d 618, 619 (Sup.Ct.1973), the Court will award back pay against the Sussex County Council. However, the Court will not order reinstatement because the Court has found that Muir's term would not have been renewed for another year when his existing term expired on June 30, 1973.

 (2) The provisions of 9 Del.C. § 7006(c)(8), as implemented by Ordinance No. 6, Article 12, Tenure of Service were not violated because they apply to classified employees and to the Deputies and Chief Deputies of the county departments (who are "unclassified") but not to the County Administrator. This is so because the dismissal of a permanent employee pursuant to Article 12 is initiated by the Administrator in consultation with department heads (Article § 12.30), and thus dismissal of the County Administrator certainly was not intended to proceed according to the procedures outlined therein.

(3) The defendant Sussex County Council did not violate Article 15, § 15.-10 which states that "no person shall be appointed to, or removed from, or in any way favored or discriminated against with respect to any county position or appointive county administrative office because of . . . political . . . affiliations." Muir, as has heretofore been held, was not dismissed solely because he was a Republican.

## FINAL JUDGMENT

For the foregoing reasons, it is ordered that judgment is hereby entered against the defendant Sussex County Council and in favor of the plaintiff in an amount representing his salary and other monetary benefits for the period March 1, 1973 through June 30, 1973 together with suit costs.