498 F.2d 1100
 Steve COLLINS et al., Plaintiffs-Appellants,
v.
Mitchell WOLFSON, Alfred McCarthy, William D. Pawley, Jack
Kassewitz and Garther Reeves, Individually and as members of
the Board of Trustees of the Miami-Dade Community College,
et al., etc., Defendants-Appellees.
 No. 73-3381.
 United States Court of Appeals, Fifth Circuit.
 Aug. 9, 1974.
 
 Richard H. Frank, Tampa, Fla., for plaintiffs-appellants.
 Kenneth L. Ryskamp, Miami, Fla., for defendants-appellees.
 Before BROWN, Chief Judge, and RIVES and DYER, Circuit Judges.
 DYER, Circuit Judge:
 
 
 1
 This case, involving disparate claims by seven college instructors against the trustees of Miami-Dade Community College, began with a complaint by four teachers at Miami-Dade whose employment contracts were not renewed for the 1973-74 school year. The instructors alleged that their respective nonrenewals were effected pursuant to an arbitrary and subjective set of criteria employed by the Board of Trustees in ascertaining which teachers, would not be rehired upon the school's implementing a reduction in size in college personnel. In addition to the complaint of subjective criteria, one of the four instructors, Collins, expressly charged that his nonrenewal was retaliatory in nature to punish him for participation in a well-publicized political demonstration at the Democratic National Convention in July 1972. Two instructors, Rivas and Riley, who like Collins were untenured, made no allegations of retributive nonrenewals but simply complained of the arbitrary nature of the Board's evaluative criteria. The fourth instructor, Hernhuter, essentially tracked the claims of Professors Rivas and Riley, but alleged additionally that he enjoyed Miami-Dade's genre of tenure, a 'continuing contract,' and that this vested property interest was not summarily defeasible by the Board's couching the termination as a 'reduction in force' rather than as a discharge.
 
 
 2
 In an amended complaint, three additional instructors joined as plaintiffs alleging that, although their employment was not terminated, their constitutional rights were violated by a college official's depositing in their files an uncomplimentary memorandum charging neglect of duty for their unexcused absence from campus on the morning of February 7, 1973, and inviting their response to these charges.
 
 
 3
 The district court dismissed the entire suit for failure by all plaintiffs to state a claim for relief under 42 U.S.C.A. 1983. The court held, first, that Collins had failed to exhaust his administrative remedies; second, that Rivas and Riley, as nontenured faculty members, could be nonrenewed for any reason other than a constitutionally impermissible one; third, that Hernhuter, although tenured, was employed under a contract expressly providing for his termination if his position were discontinued, and that he failed to allege unconstitutional discrimination in connection with his discharge; and fourth, that the three allegedly maligned instructors had not alleged nonrenewal or termination, or that the memoranda contents were false. We affirm, albeit for different reasons, except as to Hernhuter, whose claims should have withstood the trustees' motion to dismiss.
 
 COLLINS AND RILEY
 
 4
 At the outset, we dispose of the appeal of Collins and Riley as moot.[1] Both individuals have been reemployed by Miami-Dade pursuant to the college's policy of granting priority in hiring, when vacancies subsequently occur, to faculty members who were nonrenewed because of a reduction in force. As a result of their restoration, neither appellant continues to have a live controversy with the trustees. See Geduldig v. Aiello, 1974, U.S. , 94 S.Ct. 2485, 40 L.Ed.2d (certain plaintiffs' subsequent receipt of benefits under California's disability insurance system held to moot their complaint of unconstitutional policies excluding them from participation). Removing these plaintiffs does not terminate this litigation, of course, as other complainants remain, cf. Richardson v. Ramirez, 1974, U.S. , 94 S.Ct. 2655, 40 L.Ed.2d . Accordingly, we proceed to the contentions of the remaining complainants.
 
 RIVAS
 
 5
 With the elimination of Collins and Riley from the litigation, only Rivas remains as a nonrenewed, nontenured instructor. At bottom, Rivas contends that the trustees, although competent not to renew his contract for any lawful reason whatever, may nonetheless not base nonrenewal on subjective evaluative criteria incapable of objective application. This contention will not withstand analysis, even accepting the questionable proposition that the Board's criteria are undefinable.
 
 
 6
 To consider Rivas' argument in proper perspective, two points must be borne in mind. First, Rivas does not claim that he was dismissed or discharged at all; rather, he alleges that his contract was not renewed due to a reduction in the size of Miami-Dade's faculty. Second, he nowhere avers that his nonrenewal was retailiatory in nature to punish the exercise of his constitutional rights.[2] Instead, his entire claim reduces to a contention that these allegedly subjective criteria in and of themselves deny his First and Fourteenth Amendment rights.
 
 
 7
 First, we can find no conceivable First Amendment claim embodied in Rivas' complaint, for he leaves to mere conjecture the possibility that subjective standards could mask an improperly grounded failure to renew. To bring himself within the purview of section 1983 under this theory, however, Rivas must allege that the trustees' employing these criteria actually operated in some manner to deprive him of presently enjoyable First Amendment rights, or to punish him for their previous exercise, and this he has utterly failed to do.[3]
 
 
 8
 Unless his own exercise of First Amendment freedoms was either stymied or punished by the existence or implementation of these standards, no First Amendment violation is stated. See Perry v. Sindermann, supra; Keyishian v. Board of Regents, 1967, 385 U.S. 589, 605-606, 87 S.Ct. 675, 17 L.Ed.2d 629; Shelton v. Tucker, 1960, 364 U.S. 479, 484-485, 81 S.Ct. 247, 5 L.Ed.2d 231.
 
 
 9
 As to his Fourteenth Amendment claims, Rivas readily concedes that his status at Miami-dade did not rise to the level of a 'property' interest in continued employment demanding protection of the Due Process Clause, Inasmuch as he lacked tenure in the form of a continuing contract. Board of Regents v. Roth, 1972, 408 U.S. 564, 577-578, 92 S.Ct. 2701, 33 L.Ed.2d 548. Instead, Rivas contends that nonrenewal under these circumstances stigmatized him to such an extent as to abridge his interests in 'liberty' protectible under the Fourteenth Amendment. Although all would agree that Rivas has directly suffered from his nonrenewal, we are equally convinced that this result is constitutionally insignificant.
 
 
 10
 That governmental labeling of an individual with a badge of disgrace constitutes a deprivation of 'liberty' cannot be gainsaid. Thus the Supreme Court has indicated that charging an individual with dishonesty or immorality, Board of Regents v. Roth, supra, at 573, 92 S.Ct. 2701, or publicly branding him in essence as anti-socially enslaved to spirits, Wisconsin v. Constantineau, 1971, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515, so infringes liberty interests of the individual as to require significant procedural protections. But these holdings do not aid Rivas, as he would have it, for he has not been degradingly labeled by his nonrenewal. The precise reason for the trustees' failing to renew Rivas' contract was not any alleged wrongdoing on his part but simply that someone on the faculty had to go because of a necessary reduction in staff size. In fact, by definition a reduction in force means that someone who otherwise would likely by invited to stay must be relieved. Employing admittedly general criteria or guidelines is thus confined to determining who among qualified instructors is more or less expendable, rather than deciding who on the faculty has so misbehaved as to warrant dismissal for cause. There is simply no 'stigma' or 'badge of infamy' associated with this sort of nonrenewal.
 
 
 11
 Indeed, once the need arose to reduce the staff, the Board could employ any device or standard to implement the reduction, such as arbitrarily drawing lots or otherwise leaving the decision to change, so long as the actual reason for the particular separation was not retribution against the instructor's constitutionally protected conduct. As we have already seen, Rivas made no allegation that his nonrenewal stemmed from any retaliatory animus harbored by the trustees.
 
 
 12
 Thus under any view of his constitutional doctrines, Rivas has failed to state a claim cognizable under section 1983.
 
 HERNHUTER
 
 13
 The foregoing discussion concerning Rivas' constitutional arguments is fully applicable to much of Hernhuter's contentions, as he too alleges simply that the use of subjective criteria, without more, contravenes the Constitution. But Hernhuter's claims do arise in a concededly different posture than Rivas', since Hernhuter was employed under a continuing contract. Consequently, Hernhuter clearly enjoyed a property interest deserving of constitutional protection upon its termination.[4] See Board of Regents v. Roth, supra, 408 U.S. at 577, 92 S.Ct. 2701.
 
 
 14
 One incident of constitutional protection against state deprivation of property interests is that, at some point, notice and a hearing appropriate to the particular circumstances must be afforded. Bell v. Burson, 1971, 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90. We conclude that Hernhuter should have been permitted by the court to establish entitlement to such a hearing, the purpose of which would be to assure that his position was in fact 'discontinued' within the meaning of the contract and, if he was instead the victim of a 'reduction in force,' that the trustees made their decision pursuant to their previously announced criteria. Moreover, in granting the motion to dismiss, the court prematurely concluded that Hernhuter was properly terminated due to discontinuance of his position, for we are unenlightened as to whether 'discontinuance of position' within the meaning of his contract means the same thing as 'reduction in force' within the ambit of Miami-Dade policy. We therefore conclude that despite the vulnerability of Hernhuter's arguments with respect to the Board's criteria per se, he did state a claim under section 1983 sufficient to withstand a motion to dismiss.
 
 
 15
 Finally, we affirm the district court's judgment with respect to the three instructors, Wernert, McLeod and Killbride, whose brief adventure away from campus on behalf of collective bargaining was memorialized in unfavorable memoranda from a college administrator. Lodging these memos, without more, in the instructors' respective files gives rise to no constitutionally based grievance. Importantly, the instructors make no allegation that any disciplinary action or sanction has been taken, or that any is even presently threatened against them, or that the presence of these memos will block future promotions or other perquisites of academic life. Moreover, there is no averment that the presence of these documents has in any manner checked their exercise of First Amendment rights. We accordingly fail to discern from the complaint that these instructors have suffered any injury in fact, since they continue in their respective posts and do not allege to have been chilled one iota in exercising First Amendment rights.[5]
 
 
 16
 No cause of action was stated by these three instructors, and their complaint was therefore properly dismissed.
 
 
 17
 Affirmed in part; reversed in part; and remanded.
 
 
 
 [1]
 By so holding, we need not address the issue of Collins' failure to exhaust administrative remedies, an omission relied upon by the district court in granting the motion to dismiss. But see Steffel v. Thompson, 1974 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505; Preiser v. Rodriquez, 1973, 411 U.S. 475, 492-493, n. 10, 93 S.Ct. 1827, 36 L.Ed.2d 439; McNeese v. Board of Education, 1963, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622; Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492
 
 
 [2]
 On the contrary, of the nonrenewed instructors, only Collins alleged that his nonrenewal stemmed in part from official disapproval of his constitutionally protected activities
 
 
 [3]
 This necessity of injury stems from the language of section 1983, which provides in pertinent part:
 Every person who, under color of any statute, ordinance, regulation . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . ..
 
 
 [4]
 The precise nature of Hernhuter's property interest, as defined by his employment contract, will of course have to be determined by reference to established constitutional principles. See Arnett v. Kennedy, 1974, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15
 
 
 [5]
 Nor does the existence of the memoranda, without more, stigmatize or disgrace these instructors so as to deprive them of 'liberty.' Since their employment continues with Miami-Dade, these memos are not being circulated to potential employers so as to impair their job prospects. Thus this case is unlike Wellner v. Minnesota State Jr. College Board, 8 Cir. 1973, 487 F.2d 153, where charges of racism were leveled against an instructor who was subsequently nonrenewed by reason of these allegations. In view of the besmirching effect the discharge had on the instructor's reputation, the court held that before this disgrace could be visited on him, a hearing would have to be provided so that he could attempt to clear his name. It was in light of this degrading nonrenewal that the court ordered the records purged of references to the instructor's alleged racism