PARKER, Justice.
The State of Alabama Board of Education (“SBOE”); Dr. Thomas B. Bice, individually and in his official capacity as the State Superintendent of Education;[1] *607 and Dr. Edward R. Richardson, individually and in his official capacity as the State Intervention Chief Financial Officer (hereinafter referred to collectively as “the petitioners”), petition this Court for a writ of mandamus directing the Jefferson Circuit Court (“the circuit court”) to vacate its order denying the petitioners’ motion to dismiss the claims filed against them by Sharper D. Adams and numerous other former employees of the Birmingham Board of Education (“the BBOE”) (hereinafter referred to collectively as “the respondents”)[2] and to enter an order dismissing with prejudice all claims against the petitioners on the basis of immunity. We grant the petition in part, deny it in part, and issue the writ.
I. Facts and Procedural History
The School Fiscal Accountability Act, § 16-13A-1 et seq., Ala. Code 1975 (“the Accountability Act”), which became effective on June 1, 2006, Act No. 2006-196, Ala. Acts 2006, requires the State superintendent of education to oversee the financial integrity of the local school boards in Alar bama, § 16-13A-2, Ala. Code 1975. The Accountability Act also requires local school boards to submit certain financial reports, including an annual projected budget, to the State chief education financial officer (“the CEFO"). §§ 16-13A-6 and -7, Ala. Code 1975. In addition, local school boards must establish and maintain a minimum-reserve fund equal to one month of the local school board’s operating expenses. § 16-13A-9, Ala. Code 1975.
At the end of fiscal year 2011, the CEFO determined that 31 of Alabama’s 134 local school boards, including the BBOE, did not have a fully funded minimum-reserve fund. In fiscal year 2012, although the BBOE’s monthly operating expenses were approximately $17 million, the balance of the BBOE’s minimum-reserve fund was approximately $2 million. Thus, pursuant to § 16-13A-9, the BBOE’s minimum-reserve fund was underfunded by approximately $15 million.
In February 2012, because of the BBOE’s failure to fully fund its minimum-reserve fund, the CEFO met with representatives of the BBOE and other noncom-pliant local school boards to help them prepare a plan' to build and maintain the required minimum-reserve fund. Pursuant to the authority granted to the CEFO under the Accountability Act, the CEFO required the BBOE and other noncompli-ant local school boards to submit to the SBOE for its approval, by April 2, 2012, a financial-recovery plan detailing how the boards planned to fully fund their required minimum-reserve funds. Once approved by the SBOE, the local school boards’ financial-recovery plans were-to be adopted as a resolution by the local school board. The resolutions adopting the financial-recovery plans were to be submitted to the SBOE by May 31, 2012.
The BBOE failed to submit a financial-recovery plan to the SBOE for its approval by the April' 2, 20Í2, deadline, and its minimum-reserve fund remained underfunded. As a result, on April 12, 2012, the SBOE adopted a “Resolution for an Investigative Review of the Governance of the [BBOE].” This resolution authorized and directed Dr. Bice to “investigate, review, and resolve by , appropriate order(s) all *608 controversies and matters” concerning the BBOE.
Throughout April and May 2012, the SBOE and the BBOE worked to create a financial-recovery plan for the BBOE. The CEFO met with the BBOE to discuss the specifics of a potential financial-recovery plan on April 18, April 24, and May 24, 2012.
On May 31, 2012, the CEFO and the superintendent of the BBOE presented a financial-recovery plan (“the financial-recovery plan”) to the BBOE for the BBOE’s adoption. The financial-recovery plan included, among other things, a reduction in force (“RIF”), which required that the jobs of the respondents, among others, be eliminated. The financial-recovery plan projected that the BBOE’s required minimum-reserve fund would be fully funded at $17 million within two years of implementation of the plan.
On June 5,2012, a motion was presented to the BBOE to approve the financial-recovery plan; the motion failed for lack of a majority. At the BBOE’s next regular meeting, held on June 12, 2012, all the BBOE members present voted to approve the financial-recovery plan, but the financial-recovery plan as approved did not include details as to how the financial-recovery plan would be implemented.
On June 14, 2012, as a result of the BBOE’s continued failure to approve the required financial-recovery plan (including a plan for implementation), the SBOE adopted a resolution, pursuant to § 16-6B-4, Ala. Code 1975,[3] authorizing Dr. Bice to appoint a person to provide oversight of the BBOE’s day-to-day operations and to advise and assist the BBOE with the implementation of the financial-recovery plan. This resolution further authorized Dr. Bice, in the event a financial-recovery *609 plan, including implementation, was not approved by the BBOE at its June 26, 2012, meeting, to intervene and to assume direct control of the fiscal operation of the BBOE and to appoint a chief financial officer to manage the financial operations of the BBOE in order to restore the BBOE to a sound financial condition.
On June 26, 2012, the CEFO and the superintendent of the BBOE presented the implementation phase of the financial-recovery plan to the BBOE for its approval. However, the BBOE did not approve the financial-recovery plan. Dr. Bice then intervened and appointed Dr. Richardson as the chief financial officer for purposes of intervention, i.e., the State Intervention Chief Financial Officer.
The BBOE continued to resist the SBOE’s efforts to implement the financial-recovery plan. As a result, the SBOE, Dr. Bice, and Attorney General Luther Strange (“the State plaintiffs”) sued the BBOE and its members, in their official capacities, in the Jefferson Circuit Court on July 20, 2012, seeking declaratory and injunctive relief (“the SBOE action”). The State plaintiffs sought to determine the authority of the SBOE and Dr. Bice to control the BBOE’s financial operations. The court entered a temporary restraining order preventing the BBOE from interfering with the implementation of the financial-recovery plan; fi’om interfering with any other decision or action deemed necessary by the SBOE to ensure that schools included in the Birmingham School System opened for the academic year in a timely and orderly manner; or from interfering with Dr. Bice’s and his staffs access to offices of the BBOE and its computers and files.
Meanwhile, on July 24, 2012, Dr. Bice presided over a BBOE meeting. At this meeting, the superintendent of the BBOE requested that the members of the BBOE vote to approve the implementation of the financial-recovery plan, which included the RIF: The vote of the members of the BBOE bn the adoption of the financial-recovery plan was evenly split; Dr. Bice overrode the tie vote of the members of the BBOE and approved the implementation of the financial-recovery plan.
On August 13, 2012, the court in the SBOE action granted the SBOE’s request for an injunction. The court held that the SBOE and Dr. Bice were authorized by Alabama law to take all the actions they had taken with respect to the BBOE. On October 11, 2012, after the final judgment had been entered, the respondents filed a motion to intervene in the SBOE action, which the Jefferson Circuit Court denied.
On January 22, 2013, the respondents filed the underlying action against the petitioners, the BBOE, and certain BBOE officials (the BBOE and the BBOE officials are hereinafter referred to collectively as “the BBOE defendants”).[4] In their complaint, the respondents sought a judgment declaring that the petitioners did not have the authority under state law to adopt and to implement the financial-recovery plan. Specifically, the respondents sought a judgment declaring that the petitioners did not have the authority to implement the RIF. Rather, the respondents alleged that the BBOE was the entity with the authority to adopt and to implement the financial-recovery plan, including the RIF, which, the respondents argued, it did not do, because its vote ended in a tie vote overridden by Dr. Bice’s action. The respondents requested that they be reinstated to their now eliminated positions with the BBOE and that they be awarded money damages in the form of backpay from the time their *610 positions with the BBOE were eliminated as a result of the implementation of the RIF. In a separate count, the respondents alleged that their due-process rights had been violated by the elimination of their positions. The respondents cited 42 U.S.C. § 1983 and alleged:
“[The petitioners’] aforementioned conduct violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const, amend. XIV, § 1, and the guaranty of due process contained in the Alabama Constitution, Ala. Const. 1901, art. I, §§ 1, 6, 13, and 22, denying [the respondents’] property rights without providing due process of law as evidenced by the failure of [the petitioners] to provide [the respondents] with proper notice of the adverse employment actions taken against them in the illegal RIF of July 24, 2012, in express violation of the Students First Act, § 16-24C-6(b)[, Ala. Code 1975].”
Under this count, the respondents requested the following relief:
“An order declaring that [the respondents], having been denied proper notice of the adverse employment actions taken against them in the illegal July 24, 2012 RIF implemented in 2012 and 2013, in violation of § 16-24C-6(b), Code of Alabama (1975), have been denied due process of law under the Constitution of Alabama ... and the Constitution of the United States, Amendment XIV.
“That [the respondents] be immediately reinstated to their pre-RIF positions, compensation, duties, work stations, reporting and supervisory channels, and all terms and conditions of their pre-RIF employment.
“That [the respondents] be awarded general compensatory damages, to include all back pay, where appropriate, and to restore any and all benefits, as required; and such other and further relief as necessary to make [the respondents] fully whole.”
On March 1,2013, the BBOE defendants filed an answer to the complaint. On March 15, 2013, the petitioners filed a motion to dismiss the complaint. On March 25, 2013, the respondents amended their complaint to add a claim alleging that the petitioners and the BBOE defendants had failed to follow certain administrative procedures in implementing the RIF.
On April 19, 2013, the petitioners filed a motion to dismiss the respondents’ amended complaint. The petitioners argued that all of the respondents’ claims were due to be dismissed as an impermissible collateral attack on the final judgment entered in the SBOE action, which declared that the SBOE had the authority to implement the RIF. The petitioners did not argue in the motion that they were entitled to immunity. The respondents filed a memorandum of law in opposition to the petitioners’ motion to dismiss their first amended complaint.
On August 24, 2014, after extensive briefing- and oral argument, the circuit court treated the petitioners’ motion to dismiss and the respondents’ response as cross-motions for a summary judgment. The circuit court entered a partial summary judgment in favor of the, petitioners on the respondents’ -declaratory-judgment claim, entered a partial summary judgment in favor of the respondents on their duerprocess claim, and dismissed the respondents’ administrative-procedure claim. In analyzing the respondents’ due-process claim, the circuit court determined that the respondents had ,a property interest under state law in their employment with the BBOE and that they were entitled to certain due-process protections under federal law. The circuit court determined that the petitioners had violated the respondents’ *611 federal due-process rights by depriving them of their property interest without due process of law because, the circuit court concluded, the petitioners failed to comply with the procedural requirements of the Students First Act, § 16-24C-1 et seq., Ala. Code 1975 (“the SFA”). Specifically, the circuit court concluded that the SFA, a state law, required that the respondents receive notice of the fact that the implementation of the RIF would result in the termination of their employment positions with the BBOE and that the petitioners failed to give the respondents such notice. Accordingly, the circuit court concluded that the respondents’ federal due-process rights had been violated.
On September 8, 2014, the petitioners filed a motion requesting that the circuit court “reconsider” its partial summary judgment in the respondents’ favor as to the respondents’ due-process claim. It was in this motion that the petitioners first argued that they were entitled to immunity from the respondents’ claims. The petitioners alleged, among other things, that “[the respondents] are not permitted to assert a § 1983 claim for money damages against [the petitioners] in their official capacities.” The petitioners additionally alleged that the § 1983 .claim against Dr. Bice and Dr. Richardson in their individual capacities is barred by qualified immunity. Moreover, the petitioners argued that the respondents’ state-law claims are barred by State immunity and State-agent immunity. The circuit court denied the petitioners’-motion on May 13, 2015, without specifically addressing the petitioners’ immunity-based arguments.
On July 12, 2015, the respondents amended their complaint a second" time to add as plaintiffs additional former employees of the BBOE.[5] In response, on July 13, 2015, the petitioners filed a motion to dismiss the respondents’ second amended complaint. In their motion, the petitioners raised the same immunity arguments they had raised in their “motion to reconsider,” which the circuit court had denied on May 13, 2015. "
On December 3, 2015, the circuit court denied the petitioners’ motion to dismiss the respondents’ second amended complaint. On January 13,2016, the petitioners filed this petition for a writ of mandamus requesting review of the circuit court’s denial of their motion to dismiss. The petitioners argue that they are immune from liability on the respondents’ due-process claim, which the circuit court decided in favor of the respondents in its partial summary judgment; neither the petitioners nor the respondents make .any argument concerning the circuit court’s order as to the respondents’ declaratory-judgment claim or their administrative-procedure claim.
II. Standard of Review
“‘The writ of mandamus is an extraordinary legal remedy. Ex parte Mobile Fixture & Equip. Co., 630 *612 So.2d 358, 360 (Ala.1993). Therefore, this Court will not grant mandamus relief unless the petitioner shows: (1) a clear legal right to the order sought; (2) an imperative duty upon the trial court to perform, accompanied by its refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the Court. See Ex parte Wood, 852 So.2d 705, 708 (Ala.2002).
“Ex parte Davis, 930 So.2d 497, 499 (Ala.2005). A ‘petition for a writ of mandamus is an appropriate means for seeking review of an order denying a claim of immunity.’ Ex parte Butts, 775 So.2d 173, 176 (Ala.2000).
“ ‘In reviewing the denial of a motion to dismiss by means of a mandamus petition, we do not change our standard of review.’ Ex parte Haralson, 853 So.2d 928, 931 (Ala.2003).
“ ‘In Nance v. Matthews, 622 So.2d 297 (Ala.1993), this Court stated the standard of review applicable to a ruling on a motion to dismiss:
“ ‘ “On appeal, a dismissal is not entitled to a presumption of correctness. The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [it] to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [it] may possibly prevail. We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.”
“ ‘622 So.2d at 299 (citations omitted):’
“Knox v. Western World Ins. Co., 893 So.2d 321, 322 (Ala.2004).”
Ex parte Troy Univ., 961 So.2d 105, 107-08 (Ala.2006).
III. Discussion
The petitioners argue that they are entitled to the protection of immunity as to the respondents’ due-process claim. Initially, we note that there is some confusion and disagreement between the parties as to whether the respondents allege a violation of their federal or state due-process rights. In order to properly address the petitioners’ immunity arguments, we must first determine whether the respondents’ due-process claim is based on federal or state law so that we can determine whether the principles of federal immunity or state immunity apply.
The petitioners argue that the respondents’ due-process claim “seeks to vindicate an alleged violation of state law, the Students First Act.” In support of their argument, the petitioners cite the respondents’ complaint, in which the respondents alleged that they have been damaged “by the failure of [the petitioners] to provide [the respondents] with proper notice of adverse employment actions taken against them in the illegal RIF ... in violation of the Students First Act.” The petitioners also cite the circuit court’s order, which, they allege, “reinforced the notion that [the respondents’] § 1983 claim is based upon an alleged violation of the Students First Act, writing that [the circuit court] ‘most significantly ... relies on the SFA in declaring below [the respondents] were unlawfully separated from their BBOE jobs.’ ” The petitioners argue that the respondents’ due-process claim is not a § 1983 claim because the respondents seek only to vindicate a violation of state rights.
The respondents argue that their due-process claim is a § 1983 claim that seeks *613 to vindicate an alleged violation of their federal due-process rights. The respondents state that their due-process claim, “as stated both in the complaint and in the partial summary judgment order, is a federal claim under 42 U.S.C. § 1983, to vindicate the constitutional right of due process,” and that it “is squarely based in federal law: it is a claim under 42 U.S.C. § 1983.” The respondents state that they relied on the SFA only to establish that they have a property interest in their employment with the BBOE, “[b]ut [that] once there is a property interest, then the question of what ‘process’ is ‘due’ under the United States Constitution is a matter of federal law.” They state that their “claim under 42 U.S.C. § 1983 properly established that they had a property interest in their positions pursuant to state law. Once that property right attached, however, federal due process law determines whether the employees received the process they were due.” Concerning whether federal or state principles.of immunity apply, the respondents state:
“Only federal immunity law is relevant in this review. The circuit court issued a summary judgment in favor of the employees on one claim, pursuant to 42 U.S.C. § 1983: that [the petitioners] deprived employees of property without due process (or any process at all) in violation of the Fourteenth Amendment.”
Looking solely at the respondents’ complaint and the partial-summary-judgment order, it appears to us that the respondents alleged that both their federal and state due-process rights were violated. In their complaint, as set forth above, the respondents alleged that the petitioners’ conduct violated “the Due Process Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const, amend. XIV, § 1, and the guaranty of due process contained in the Alabama Constitution, Ala. Const. 1901, art. I, §§ 1, 6, 13, and 22.” The respondents also alleged that the petitioners violated the procedural requirements of the SFA. These are clearly allegations that the respondents’ federal and state due-process rights were violated. However, in their responses before this Court, the respondents unequivocally abandon any allegation they may have made in their complaint that the petitioners violated their state due-process rights.[6] Accordingly, based on the respondents’ abandonment of their allegation that the petitioners violated their state, due-process rights, we conclude that the respondents’ due-process claim is a § 1983 claim. Therefore, only the petitioners’ immunity arguments concerning the respondents’ § 1983 claim are before us,' and we will consider only whether the petitioners are immune under federal principles of immunity. See Ex parte Madison Cty. Bd. of Educ., 1 So.3d 980, 987, 989 (Ala.2008) (immunity against a federal constitutional claim under § 1983 is not a matter of state immunity law but a matter of federal immunity law).
*614 We turn now to the petitioners’ federal immunity arguments.[7] First, the petitioners argue that they are entitled to immunity from the respondents’ § 1983 claim under the Eleventh Amendment: “To the extent this Court is inclined to treat [the respondent^’] claim as a claim- under § 1983, the [petitioners] are entitled to dismissal pursuant to the Eleventh Amendment to the United States Constitution.”
We first consider -whether the SBOE is entitled to Eleventh Amendment immunity from the respondents’ § 1983 claim. In Alabama State University v. Danley, 212 So.3d 112, 133 (Ala.2016), this Court stated: “ ‘ “It is clear ... that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This .jurisdictional bar applies regardless of the nature of the relief sought.” ’ ” (Quoting Ex parte Retirement Sys. of Alabama, 182 So.3d 527, 537-38 (Ala.2015), quoting in turn Pennhurst State Sch. & Hosp. v. Halder-man, 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)(emphasis added).) In State Board of Education v. Mullins, 31 So.3d 91, 96 (Ala.2009), this Court stated that “[t]he [SBOE] ... [is an] agencfy] of the State. Ex parte Board of Educ., 810 So.2d 773, 776 (Ala.2001); Ex parte Craft, 727 So.2d 55, 58 (Ala.1999).” It is undisputed that the SBOE did "not consent to the respondents’ suit against it. Accordingly, the SBOE, as an agency of the State, is entitled to immunity under the Eleventh Amendment from the respondents’ § 1983 claim.
 Next, we will consider whether Dr. Bice and Dr. Richardson, in their official capacities, are entitled to immunity under the Eleventh Amendment from the respondents’ § 1983 claim. As set forth above, the respondents have requested money damages in the form of backpay and injunctive relief in the form of reinstatement to their pre-RIF positions. Concerning the respondents’ request for money damages, this Court has unequivocally stated that “[c]laims. for monetary relief against State officials in their official capacities are barred by the .Eleventh Amendment.” Ex parte Retirement Sys. of Alabama, 182 So.3d at 538 (citing Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (“ ‘[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.’ ” (quoting Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945)))). Accordingly, Dr. Bice and Dr. Richardson, in their official capacities, are entitled to immunity under the Eleventh Amendment from the respondents’ § 1983 claim insofar as the respondents seek money damages.[8] However, Dr. Bice and Dr. Richardson, in their official capacities, are not entitled to immunity under the Eleventh Amendment *615 from the respondents’ §■ -1983 claim insofar as the respondents seek injunctive relief. In Lane v. Central Alabama Community College, 772 F.3d 1349, 1351 (11th Cir. 2014), the Eleventh Circuit stated:
“Generally speaking, the Eleventh Amendment bars civil actions against state officials in their official capacity ‘when the state is the real, substantial party in interest.’ Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). Pursuant to the exception established in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), official-capacity suits against state officials are pemiissi-ble, however,, under the Eleventh Amendment when the plaintiff seeks ‘prospective equitable relief to end continuing violations of federal law.’ ”
The Eleventh Circuit has specifically held that “requests for reinstatement fall within the scope of the Ex parte Young exception and, thus, are not barred by the Eleventh Amendment.” M. Thus, Dr. Bice and Dr. Richardson, in their official capacities, are not entitled to immunity to the extent the respondents seek prospective injunctive relief in the form of reinstatement.
Next, we must consider whether Dr. Bfce and Dr. Richardson are entitled to immunity in their individual capacities. “[T]he Eleventh Amendment does not protect state employees sued in their individual capacity for employment-related acts.” Jackson v. Georgia Dep’t of Transp., 16 F.3d 1573, 1575 (11th Cir.1994) (citing Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)). Thus, Dr. Bice and Dr. Richardson are not entitled to Eleventh Amendment immunity in their individual capacities.
However, the.petitioners argue that Dr. Bice and Dr. Richardson, in their individual capacities, are entitled to qualified immunity from the respondents’ § 1983 claim. This Court has summarized the law on qualified immunity as follows:
“ ‘[Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or 'constitutional rights of which a reasonable person would have known.’
“Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). ‘Qualified immunity is designed to allow government officials to avoid the expense and disruption of going to trial, and is not merely a defense to liability.’ Hardy v. Town of Hayneville, 50 F.Supp.2d 1176, 1189 (M.D.Ala.1999). ‘Am official is entitled to qualified immunity if he is performing discretionary functions and his actions do “ ‘not violate clearly established statutory or -constitutional rights of which a reasonable person would have known.”” Hardy, 50 F.Supp.2d at 1189 (quoting Lancaster v. Monroe County, 116 F.3d 1419, 1424 (11th Cir.1997)).”
Ex parte Alabama Dep’t of Youth Servs., 880 So.2d 393, 402 (Ala.2003). “To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority. ... Once the defendants have established that they were acting within their discretionary authority, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate.” Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir.2003). Here, the parties do not dispute whether Dr. Bice and Dr. Richardson were acting within their discretionary authority. Thus, we must determine whether the respondents have demonstrated that Dr. Bice’s and Dr. Richardson’s actions violated the respondents’ clearly established rights, rendering qualified immunity inappropriate.
*616 In analyzing whether a right is clearly established, we must consider whether preexisting law at the time of the alleged acts provided fair warning to Dr. Bice and Dr. Richardson that their actions were unconstitutional. See Hope v. Pelzer, 536 U.S. 780, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (“[Qualified immunity operates ‘to ensure that before [officials] are subjected to suit, [they] are on notice their conduct is unlawful.’ ” (quoting Saucier v. Katz, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001))).
“For a constitutional right to be clearly established, its contours ‘must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see Mitchell [v. Forsyth, 472 U.S. 511,] 535, n. 12, 105 S.Ct. 2806, 86 L.Ed.2d 411 [ (1985) ]; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.’ Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).”
Hope, 536 U.S. at 739.
The United States Supreme Court noted in Wilson v. Layne, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), that the law was not clearly established where the “state of the law was ... at best undeveloped.” The issue in Wilson involved whether a reasonable police officer could have believed that bringing members of the media into a home during the execution of an arrest warrant was lawful. Id. at 615. In concluding that the law regarding such an action was not clearly established, the Court reasoned:
“Petitioners have not brought to our attention any cases of controlling authority in them jurisdiction at the time of the incident which clearly established the rule on which they seek to rely, nor have they identified a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.”
Id. at 617. Because of the undeveloped state of the law, the Court concluded: “If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.” Id. at 618, 119 S.Ct. 1692.
The United States Court of Appeals for the Eleventh Circuit has stated that, within that circuit, “the law can be ‘clearly established’ for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose.” Festa v. Santa Rosa Cty. Florida, 413 Fed.App’x 182, 185 (11th Cir.2011) (not selected for publication in the Federal Reporter) (quoting Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 827 n. 4 (11th Cir.1997)).
The respondents rely solely upon Collins v. Wolfson, 498 F.2d 1100 (5th Cir.1974), to support their argument that the principle that an employee with a property interest in his employment is entitled to notice and a hearing,’ even in an RIF situation, is clearly established. In Collins, one employee, with a “continuing contract” akin to tenure, alleged that his “vested property interest was not summarily defeasible by the Board’s couching the termination as a ‘reduction in force’ rather than as a discharge.” Id. at 1102. However, the United States Court of Appeals for the Fifth Circuit narrowly held only that the employee “should have been permitted by the court to establish entitlement to such a hearing, the purpose of which would be to assure that his position was in fact ‘discontinued’ within the meaning of the contract and, if *617 he was instead the victim of a ‘reduction in force,’ that the trustees made their decision pursuant to their previously announced criteria.” Id. at 1104 (emphasis added). Because Collins held merely that the employee had a right to establish entitlement to a hearing to determine whether his position had been discontinued within the meaning of his contract or pursuant to an RIF, Collins does not clearly establish a right.to a hearing before termination of employment pursuant to a bona fíde RIF.. This is the only case the respondents cite to demonstrate that they had a clearly established right to a hearing before having their positions terminated pursuant to an RIF.
The petitioners cite several cases from other jurisdictions that they allege demonstrate that employees with a property interest in their employment do not have a clearly established right to notice and a hearing when their employment is terminated pursuant to a bona fide RIF. See Drivers, Chauffeurs & Helpers Local 639 v. District of Columbia Pub. Sch. (No. 02-7082, September 17, 2003) (D.C.Cir.2008) (not published in F. Supp.) (“[T]he Due Process Clause does not require individualized pre-termination hearings when discharges are occasioned by genuine redue-tions-in-force ....”); Duffy v. Sarault, 892 F.2d 139, 147 (1st Cir.1989) (“Where a reorganization or other cost-cutting measure results in dismissal of an employee no hearing is due.”); Misek v. City of Chicago, 783 F.2d 98, 101 (7th Cir.1986) (“Of course, if defendants on remand could show that plaintiffs were discharged pursuant to a reorganization in fact, plaintiffs would not be entitled to relief.”); and Franks v. Magnolia Hosp., 888 F.Supp. 1310, 1313 (N.D.Miss.1995), aff'd, 77 F.3d 478 (5th Cir.1996) (“[AJssuming arguendo that the plaintiff had a property interest in employment, a due process hearing is not required when the termination is the result of a bona fíde reduction in force. It is clear to the court that the termination of 71 employees is a bona fide reduction,”).
In Duffy, one of the cases relied upon by the petitioners to show that there is no clearly established right to notice and a hearing when employment is terminated as a result of an RIF, the United States Court of Appeals for the First Circuit held that “[wjhere a reorganization or other cost-cutting measure results in dismissal of an employee no hearing is due.” 892 F.2d at 147 (citing Hartman v. City of Providence, 636 F.Supp. 1395, 1410 (D.R.I.1986) (“Numerous federal and state courts have recognized that an employee who loses his or her job ... is not entitled to a hearing .., when- the position is abolished pursuant to a bona fide government reorganization or kindred cost-cutting measure.”)). In Duffy, the trial court found that the plaintiffs had a property interest in their jobs; however, the trial court also found that the “reorganization exception” to due-process hearings applied because the reorganization was not pretextual but was a valid reorganization. Id. The First Circuit agreed and held: “We find that because the appellants’ jobs were lost subject to a valid reorganization they were not entitled to due process prior to that reorganization taking effect.” Id.
The petitioners also cite Ex parte Moulton, 116 So.3d 1119 (Ala.2013), in which this Court cited Duffy favorably. Although not dispositive to this Court’s holding in Moulton—that the employee was not entitled to a due-process hearing under the terms of the staff-employee handbook— this Court did cite Duffy in a footnote in the context of its due-process discussion for the proposition that “where reorganization or cost-saving measures result in the termination of a public employee’s employment as a result of the elimination of the employee’s position, no hearing is required *618 to satisfy due process.” Moulton, 116 So.3d at 1135 n. 6 (citing Duffy, 892 F.2d at 147).
In addition to the cases cited by the petitioners, other courts have suggested that no due-process violation occurs.when an employee is eliminated pursuant to a legitimate governmental reorganization. See Schulz v. Green Cty., Wisconsin, 645 F.3d 949, 952 (7th Cir.2011) (“When a government eliminates an employee’s position in connection with a ‘legitimate governmental reorganization’ ... the employee is not entitled to notice or a hearing.”); West v. Grand Cty., 967 F.2d 362, 367 (10th Cir.1992) (“The fact that [the county] labeled [the employee’s] discharge a ‘reduction in force’-does not .affect her entitlement to a pretermination hearing when she is asserting that the reduction in force was a sham aimed particularly at her.” (emphasis added)); and Edmiston v. Idaho State Liquor Div. (No. 1:11-CV-395-BLW, May 7, 2014) (D. Idaho 2014) (not selected for publication in F.Supp.) (“If she was fired for reasons connected to her performance rather than as part of a system-wide reduction-in-force, there is no dispute that she was entitled to certain due process rights that she did not receive.” (emphasis added)). In deciding to recognize a “reorganization, exception,” the United States District Court for the District of Rhode Island in Hartman, 636 F.Supp. at 1415, reasoned:
“[T]he ‘hearing’ to which [the plaintiff] belatedly claims an entitlement would be at best an utter waste of time, at worst a complete fiasco. There would be no bill of particulars or specification of charges to -be answered; rather, the dialogue would center around what revenues were available to government and how the City should best deploy them. Unless the trumpet is sounded with far more clarity than is here the case, courts ought not to march gratuitously into such a political thicket. Refusing to recognize a reorganization exception to § 904 would bring about, in the Trembley [v. City of Central Falls] phrase, ‘absurd or unreasonable results.’ 480 A.2d [1359] at 1363 [ (R.I.1984) ].' This court will not buy such tawdry goods.”
Thus, several courts confronting the question of requisite due process in the context of an RIF have held that no due process is required in that situation.[9]
Neither the United States Supreme Court, nor the Eleventh Circuit, nor this Court has expressly decided the issue (though this Court has cited Duffy; which found no right to due process in the con *619 text of an RIF, favorably). Numerous courts that have decided the issue have come out against a right to procedural due process in the context of a bona fide RIF. Due process has been required only in the context of an RIF where the employee with a property interest alleged that the RIF was a sham or pretextual. The respondents here have not so alleged. Thus, the right to such process is not sufficiently established to relieve Dr.- Bice and Dr. Richardson, in their individual. capacities, of immunity. Accordingly, Dr. Bice and Dr. Richardson, in their individual capacities, are entitled to qualified immunity.
IV. Conclusion
The SBOE is entitled to immunity under the Eleventh Amendment from the respondents’ § 1983 claim. Dr. Bice and Dr. Richardson, in their official capacities, are entitled to immunity from liability under the Eleventh Amendment insofar as the respondents seek money damages. Dr. Bice and Dr. Richardson, in their official capacities, are not, however, entitled to immunity from liability under the Eleventh Amendment insofar as the respondents seek in-junctive relief in the form of reinstatement. Dr. Bice and Dr. Richardson, in their individual capacities, are entitled to qualified immunity as to the respondents’ § 1983 claim. Therefore, we grant the petition in part and issue a writ directing the circuit court to vacate its December 3, 2014, order denying the petitioners’ motion to dismiss and to enter an order dismissing the respondents’ § 1983 claim against the SBOE, dismissing the respondents’ § 1983 claim against Dr. Bice and Dr. Richardson, in their official capacities, insofar as the respondents seek money damages, and dismissing the respondents’ § 1983 claim against Dr. Bice and Dr. Richardson, in their individual capacities; we deny the petition in part as to the petitioners’ argument that Dr. Bice -and Dr. Richardson, in their official capacities, are entitled to immunity from liability under the Eleventh Amendment from the respondents’ request for injunctive relief in the form of reinstatement.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
Stuart, Main, and Wise, JJ., concur.
Bolin, Murdock, Shaw, and Bryan, JJ., concur in the result.

. Thomas B. Bice is no longer superintendent of education. See Rule 43(b), Ala. R. App. P., *607 providing that, when a public officer is a party to an appellate proceeding and ceases to hold office, '-‘the public officer’s successor is automatically substituted as a party.”

, The respondents refer to themselves as ‘'nonprobationary employees” and assert that they' have a property interest in their- former. employment positions with the BBOE, The petitioners dispute this fact.

. Section 16-6B-4 states:
"[I]f a local board of education is determined to have submitted fiscally unsound financial reports, the State Department of Education shall provide assistance and advice. If during the assistance the State Superintendent of Education determines that the local board of education is in an unsound fiscal position, a person or persons shall be appointed by the State Superintendent of Education to advise the day-to-day financial operations of the local board of education. If after a reasonable period of time the State Superintendent of Education determines that the local board of education is still in an unsound fiscal condition, a request shall be made to the [SBOE] for the direct control of the fiscal operation of the local board of education. If the request is granted, the State Superintendent of Education shall present to the [SBOE] a proposal for the implementation of management controls necessary to restore the local school system to a sound financial condition. Upon approval by the [SBOE], the State Superintendent of Education shall appoint an individual to be chief financial officer to manage the fiscal operation of the local board of education, until such time as the fiscal condition of the system is restored. The chief financial officer shall perform his or her duties in accordance with rules and regulations established by the [SBOE] in concert with applicable Alabama law. Any person appointed by the State Superintendent of Education to serve as chief financial officer to manage the fiscal operation of a local board of education shall be required to give bond with a surety company authorized to do business in Alabama and shall not be required to receive approval of the local superintendent to expend monies. The chief financial officer shall serve at the pleasure and under the direction of the State Superintendent of Education. The State Superintendent of Education, directly or indirectly through the chief financial officer, may direct or approve such actions as may in his or her judgment be necessary to: (1) Prevent further deterioration in the financial condition of the local board; (2) restore the local board of education to financial stability; and (3) enforce compliance with statutory, regulatory, or other binding legal standards or requirements relating to the fiscal operation of the local board of education.”

. The BBOE defendants are not parties to this mandamus petition.

. ' The respondents consist of two groups of former employees. The two groups filed sepa- , rate responses to .this petition for a writ of mandamus. The first group consists of the original plaintiffs and the second group consists of the additional former employees of the BBOE. Because we treat both groups of plaintiffs as respondents, we do not differentiate those responses in our discussion, except in note 6, infra.
Roderick Jackson, a former employee of the BBOE whose employment position was eliminated by the RIF, had filed a motion to intervene in this action, which the circuit court granted. Further, the respondents had filed a motion to add as necessary parties all those former employees of the BBOE whose employment positions were eliminated or otherwise adversely affected by the RIF, which the circuit court granted. The respondents’ second amended complaint sought to add these parties as plaintiffs. As Used in the rest of this opinion, the term "the respondents” will include these parties as well.

. See the original plaintiffs’ response, at pp. 15 (alleging the respondents' due-process claim "is squarely based in federal law: it is a claim under 42 U.S.C. § 1983”), 18 (the respondents state that their due-process claim, "as stated both in the complaint and in the partial-summary-judgment order, is a federal claim under 42 U.S.C. § 1983, to vindicate the constitutional right of due process”), and 19 ("the question of what ‘process' is ‘due’ under the United States Constitution is a matter of federal law”); and the additional plaintiffs’ response, at pp. 4-5 ("Only federal immunity law is relevant in this review.”) and 6 ("The [respondents’] claim under 42 U.S.C. § 1983 properly established that they had a property interest in their positions pursuant to state law. Once that property right attached, however, federal due process law determines whether the employees received the process they were due.’’).

. We note that the respondents argue that the ; petitioners’ petition is untimely. However, the respondents rely solely on Ex parte Jones, 147 So.3d 415 (Ala.2013), to demonstrate the alleged untimeliness of the petition. In Jones, •this Court determined that a mandamus petition raising solely the issue of State-agent immunity was untimely. Jones did not consider the timeliness of a mandamus petition raising federal immunity arguments. The respondents have not cited any authority to support the conclusion that the petition is untimely as to the federal immunity issues, which are the only immunity issues before us in this case.

. The respondents concede that they cannot recover money damages against Dr. Bice and Dr. Richardson in their official capacities.

. The United States Courts of Appeals for the Second, Fourth, and Sixth Circuits have expressly declined to reach the question. See Connolly v. City of Rutland, Vermont, 487 Fed.App'x 666, 666-67 (2d Cir.2012)(not selected for publication in the Federal Reporter)(noting that, because the employee was afforded a pre-termination hearing, the court need not decide whether, also to adopt an exception to normal due-process-hearing requirements where dismissal is based on a reorganization or an RIF); Lehman v. Sturza, 28 F.3d 1210 n. 2 (4th Cir.1994) (table) (unpublished disposition) ("Because we find no property interest here, we need not reach defendants' alternative arguments that the Ordinance was merely a guide for management and that an RIF layoff does not require due process protections.”); and Upshaw v. Metropolitan Nashville Airport Auth., 207 Fed.App’x 516, 519 (6th Cir.2006) (not selected for publication in the Federal Reporter)("This case, however, does not require us to consider whether a general ’ reorganization exception permits [the employee's] termination without due process; the nature of the specific property right that [the employee] enjoyed in his position did not extend to protection from elimination of his position in the context of a reorganization.”), No federal circuit court has explicitly recognized a right to.a hearing in the context of a bona fide RIF, only when the RIF is alleged to be a sham. See West v. Grand Cty., 967 F.2d 362, 367 (10th Cir. 1992); Misek v. City of Chicago, 783 F.2d 101 (7th Cir.1986).